ACCEPTED
15-25-00017-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
6/10/2025 11:41 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00017-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
6/10/2025 11:41:59 PM
CHRISTOPHER A. PRINE
Clerk

# In the Court of Appeals for the Fifteenth Judicial District

In the Guardianship of Landen Thomas Griswold,
an Incapacitated Person

On Appeal from Cause No. G00074
County Court at Law
Cherokee County, Texas

## Appellee's Brief

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Ralph Molina
Deputy Attorney General for
Civil Litigation

Kimberly Gdula
Chief, General Litigation Division

Terri M. Abernathy
Assistant Attorney General
Texas Bar No. 24062894
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711–2548
Phone (512) 936-0562
Division Fax (512) 320-0667
Email terri.abernathy@oag.texas.gov

*Counsel for Appellee, Texas Health
and Human Services Commission*

**Oral Argument Not Requested**

## Identity of Parties and Counsel

Pursuant to Texas Rule of Appellate Procedure 38.1(a), Appellee herein provides this Court with the following list of parties and the names and addresses of all trial and appellate counsel:

| | |
|---|---|
| *Appellee:* | Texas Health and Human Services Commission |
| *Appellate Counsel for Appellee:* | Terri M. Abernathy<br>Assistant Attorney General<br>Texas Bar No. 2402894<br>Office of the Attorney General of Texas<br>General Litigation Division<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711–2548<br>Phone (512) 979–5354<br>Division Fax (512) 320-0667<br>Email Terri.Abernathy@oag.texas.gov |
| *Trial Counsel for Appellee:* | Jonathan Petix<br>Texas Bar No. 24027728<br>Texas Health and Human Services Commission<br>350 Pine Street, 9th Floor<br>Beaumont, Texas 77701<br>Phone (409) 730-4087<br>Fax (409) 730-40408<br>Email Jonathan.Petix@hhs.texas.gov |
| *Appellant:* | Candice Jeffcoat |
| *Appellant Counsel:* | Tracia Y. Lee<br>Texas Bar No. 24013021<br>Kean \| Miller, LLP<br>Pennzoil South Tower<br>711 Louisiana Street, Suite 1800<br>Houston, Texas 77002<br>Phone (713) 844-3062<br>Email Tracia.Lee@keanmiller.com |

*Trial Counsel for Appellant:*      Laurel M. Smith
Texas Bar No. 24113488
Kean | Miller, LLP
Pennzoil South Tower
711 Louisiana Street, Suite 1800
Houston, Texas 77002
Email Laurel.Smith@keanmiller.com

# Table of Contents

Statement of Facts.................................................................................1

Summary of the Argument.....................................................................5

Standard of Review.............................................................................11

Argument and Authorities....................................................................13

**I.  The trial court properly permitted HHSC's intervention into Appellant's Application. .......................................................................................13**

    A.  Texas Human Resources Code §§161.101(a) and 161.102(a), in conjunction with the Texas Estates Code and 26 Texas Administrative Code §361.23, provides direction to HHSC regarding its application for guardianship of a proposed ward when it receives a referral from CPS. ......................................13

    B.  The trial court properly granted HHSC's intervention pursuant to Estates Code §1055.003 and did not abuse its discretion. ............................................27

**II.  The trial court properly considered Appellant's suitability to serve as Griswold's guardian and properly found Appellant was unsuitable. ...........31**

    A.  Notice of the July 15th hearing on Appellant's suitability was not required but, in the alternative, Appellant waived notice by submission. ......................32

    B.  The trial court did not abuse its discretion in finding Appellant was unsuitable to be appointed guardian of Griswold. ............................................37

**III. The trial court did not abuse its discretion when it appointed HHSC as guardian of Griswold. .......................................................................................49**

    A.  The court's appointment of HHSC was proper and not an abuse of discretion. ...............................................................................................50

    B.  The court properly appointed an AAL to represent Griswold in this case and had more than sufficient evidence to make a ruling consistent with Griswold's best interest; the court also did not abuse its discretion in denying Appellant's requests for a GAL or a court investigator.....................................................52

    C.  The court properly proceeded in the hearing for the appointment of a guardian despite Griswold's absence. ...........................................................56

D. The court properly proceeded without evidence of Griswold's preference because he was unable to communicate his preference, because a determination of Appellant's suitability did not require consideration of his preference, and in considering eligible guardians, HHSC's was the only application to consider. 58

**IV. The court did not abuse its discretion in denying Appellant's motion for new trial. ...................................................................................................59**

# Table of Authorities

**Cases**

*Anderson v. City of Seven Points*,
  806 S.W.2d 791 (Tex. 1991)..............................................................................46

*Barton v. Barton*,
  584 S.W.3d 147 (Tex. App.—El Paso 2018, no pet.)...........................................12

*Cunningham v. Parkdale Bank*,
  660 S.W.2d 810 (Tex. 1983)..............................................................................32

*Downer v. Aquamarine Operators, Inc.*,
  701 S.W.2d 238 (Tex. 1985)..............................................................................42

*Exito Electronics Co. v. Trejo*,
  142 S.W.3d 302 (Tex. 2004) (per curiam)..........................................................36

*Ford Motor Co. v. Garcia*,
  363 S.W.3d 573 (Tex. 2012)..............................................................................12

*Franks v. Roades*,
  310 S.W.3d 615 (Tex. App.—Corpus Christi–Edinburg 2010) .........................52

*Garza v. Alviar*,
  395 S.W.2d 821 (Tex. 1965)..............................................................................46

*Goode v. McGuire*,
  2021 WL 4432534 (Tex. App.—Houston [1st Dist.] 2021)................................41

*Gray v. Nash*,
  259 S.W.3d 286 (Tex. App.—Forth Worth 2008, pet. denied)...........................60

*Hill v. Jones*,
  773, S.W.2d 55 (Tex. App.—Houston [14th Dist.] 1989, no writ) .....................39

*In Interest of D.M.B.*,
  467 S.W.3d 100 (Tex. App.—San Antonio 2015) .............................................36

*In re A.D.P.*,
  281 S.W.3d 541 (Tex. App.—El Paso 2008).....................................................17

*In re Estate of Gaines*,
  262 S.W.3d 50 (Tex. App.—Houston [14th Dist.] 2008)............................. 37, 41

*In re Estate of Luthen*,
  2014 WL 47950038 (Tex. App.—Corpus Christi–Edinburg 2014)....................42

*In re G.F.*,

    2012 WL 112549 (Tex. App.—Beaumont 2012) ................................................57

*In re Guardianship of A.E.*,

    552 S.W.3d 873 (Tex. App.—Fort Worth 2018, no pet.)......................... 12, 29, 42

*In re Guardianship of Boatsman*,

    266 S.W.3d 80 (Tex. App.—Fort Worth 2008, no pet).........................................11

*In re Guardianship of Finley*,

    220 S.W.3d 608 (Tex. App.—Texarkana 2007, no pet.)......................................46

*In re Guardianship of Parker*,

    275 S.W.3d 623 (2008) ......................................................................................43

*In re Guardianship of Rombough*,

    2012 WL 1624027 (Tex. App.—Fort Worth 2012) ..............................................60

*In re Guardianship of Thrash*,

    2019 WL 6499225 (Tex. App.—San Antonio 2019)...............................11, 12, 46

*In re Guardianship of Tonner*,

    514 S.W.3d 242 (Tex. App.—Amarillo 2014)...............................................11, 27

*In re Keller*,

    233 S.W.3d 454 (Tex. App.—Waco 2007) ...................................... 12, 46, 50, 56

*In re King's Estate*,

    150 Tex. 662 (1951).............................................................................................46

*In re N.L.D.*,

    412 S.W.3d 810 (Tex. App.—Texarkana 2013, reh over.) ...................... 12, 42, 50

*In re Tyler*,

    408 S.W.3d 491 (Tex. App.—El Paso 2013) ................................................11, 41

*In the Interest of T.N. and M.N.*,

    142 S.W3d 522 (Tex. App—Fort Worth 2004, no pet.) ......................................57

*Ivy v. Carrell*,

    407 S.W.2d 212 (Tex. 1966)............................................................................. xiv

*Low v. Henry*,

    221 S.W.3d 609 (Tex. 2007)...............................................................................12

*Matter of Guardianship of Browning*,

    642 S.W.3d 598 (Tex. App.—Eastland 2022, rev. denied).................................28

*Matthews v. Eldridge*,

    424 U.S. 319 (1976) ...........................................................................................37

*Mays v. Perkins*,
  927 S.W.2d 222 (Tex. App.—Houston [1st Dist.] 1996, no writ .........................37
*Paradigm Oil, Inc. v. Retamco Operating, Inc.*,
  161 S.W.3d 531 (Tex. App.—San Antonio 2004) .................................................12
*Powell v. Powell*,
  604 S.W.2d 491 (Tex. App.—Dallas 1980)...........................................................40
*Shaw v. Harris Cty. Guardianship* Program,
  2018 WL 3233237 (Tex. App.—Houston [1st Dist.] 2018)...................................32
*Torres v. Ramon*,
  5 S.W.3d 780 (Tex. App.—San Antonio 1999) .....................................................28
*Trimble v. Tex. Dep't of Protective & Regulatory Servs.*,
  981 S.W.2d 211 (Tex. App.—Houston [14th Dist.] 1998) ............................. 12, 46
*Unifund CCR Partners v. Villa*,
  299 S.W.3d 92 (Tex. 2009) ...................................................................................12
*Wiseman v. Levinthal*,
  821 S.W.2d 439 (Tex. App.—Houston [1st Dist.] 1991) ....................xiv, 4, 47, 60

**Statutes**

Tex. Est. Code § 1002.015 ...........................................................................................14
Tex. Est. Code § 1002.017 ...........................................................................................14
Tex. Est. Code § 1002.022 ...........................................................................................39
Tex. Est. Code § 1051.001 ...........................................................................................32
Tex. Est. Code § 1051.102 ...........................................................................................33
Tex. Est. Code § 1051.103 ...........................................................................................33
Tex. Est. Code § 1051.252 ...........................................................................................33
Tex. Est. Code § 1055.003 .............................................................................................7
Tex. Est. Code § 1203.151 ...................................................................................... 23, 24
Tex. Est. Code § 1251.011 ...........................................................................................25
Tex. Est. Code §1051.106 ............................................................................................33
Tex. Est. Code §1051.251 ............................................................................................36
Tex. Est. Code §1054.001 ............................................................................................52
Tex. Est. Code §1054.051 ............................................................................................53
Tex. Est. Code §1054.052 ............................................................................................53
Tex. Est. Code §1054.054 ............................................................................................53
Tex. Est. Code §1054.151 ............................................................................................54

Tex. Est. Code §1054.156 ...............................................................54

Tex. Est. Code §1055.001 ............................................................... xi

Tex. Est. Code §1101.051 ...............................................................56

Tex. Est. Code §1104.002 ...............................................................58

Tex. Est. Code §1104.101 ..................................................... 27, 38, 39, 41

Tex. Est. Code §1104.102 ..................................................... 38, 39

Tex. Est. Code §1104.351 ..................................................... 47, 48

Tex. Est. Code §1104.352 ..................................................... passim

Tex. Est. Code §1104.357 ..................................................... 45, 47, 49

Tex. Est. Code §1251.011 ...............................................................25

Tex. Fam. Code § 161.206 ...............................................................39

Tex. Fam. Code § 263.602 ...............................................................1

Tex. Fam. Code §264.101 ...............................................................13

Tex. Gov't Code §531.011 ...............................................................13

Tex. Gov't Code §531.0202 ...............................................................13

Gov't Code §531.055 ..................................................... 25, 26

Texas Human Resources Code § 161.101...................................................... passim

Texas Human Resources Code § 161.102...................................................... passim

Texas Human Resources Code § 161.108...................................................... 23, 24

Texas Human Resources Code § 48.051...............................................................16

Texas Human Resources Code § 48.204...............................................................16

Texas Human Resources Code § 48.209...............................................................14, 16, 31

Tex. R. App. P. 33 ...............................................................50

Tex. R. App. P. 38.1 ...............................................................

Tex. R. Civ. P. 120...............................................................36

Tex. R. Civ. P. 173.4...............................................................53

Tex. R. Civ. P. 324...............................................................

# Statement of the Case

Nature of the Case:    Appellant filed an application for guardianship of her biological son, to whom her parental rights were previously terminated and she has seen once in the past 12 years. HHSC intervened and filed its own application for guardianship. Appellant brings this case citing the court erred in permitting the intervention, erred in finding she was unsuitable to serve as guardian, and erred in appointing HHSC as the proposed ward's guardian.

Trial Court:    Cause No. G00074
*In the Guardianship of the Person of Landen Thomas Griswold, an Incapacitated Person*
The Honorable Janice Stone
In the County Court at Law
Cherokee County, Texas

Trial Court Disposition:    The trial court granted HHSC's Motion for Leave to Intervene, found Appellant was unsuitable to serve as guardian, and then granted HHSC's Application for Guardianship.

# STATEMENT OF PROCEDURAL HISTORY

On May 16, 2023, Candice Jeffcoat (Appellant or Jeffcoat) filed her Application for Appointment of Permanent Guardian of the Person (Appellant's Application) for Landen Griswold (Griswold). 1CR:5[1]. Appellant then moved for the appointment of an Attorney Ad Litem (AAL) for Griswold, which was granted. 1CR:12–13. Griswold's AAL filed his Original Answer requesting Appellant be found to have an adverse interest to Griswold pursuant to Texas Estates Code section 1055.001(b) , 1CR:20–22, which was set for a hearing on July 10, 2023. 1CR:23. Appellant moved for a continuance and simultaneously moved for the appointment of a Guardian Ad Litem (GAL) for Griswold on July 7, 2023. 1CR:25–34. Appellant's request for appointment of a GAL was denied on October 2, 2023. 1CR:188.

Typically, CPS will refer an incapacitated minor aging out of care to HHSC when the minor is 17 so when the minor turns 18[2], the young adult can leave CPS care and transition to a guardianship. CPS should have referred Griswold to HHSC "when [he] turned 17, and it didn't happen . . . [s]o they did it afterwards." 2RR:33.

---

[1] Citations to the clerk's record volume 1 will be referenced as "1CR" and volume 2 will be referenced as "2CR" followed by the page number. Citations to the supplemental clerk's record will be referenced as "Supp. CR." Citations to the reporter's record volume 1 will be referenced as "1RR" followed by the page number and volume 2 will be referenced as "2RR" and so on.

[2] Pursuant to Human Resources Code section 161.101(e) , a guardianship application filed under section §161.101(a) may not take effect before the individual's 18th birthday.

Upon learning of Appellant's Application, CPS referred the case to the HHSC Office of Guardianship Services (HHSC), 2RR:23, and on April 16, 2024, HHSC filed an Application for Appointment of a Permanent Guardian of the Person (HHSC's Application), 1CR:193, as well as its Petition in Intervention and Motion for Leave to Intervene, 1CR:224. The trial court set a hearing on HHSC's Petition in Intervention and Motion for Leave to Intervene for July 15, 2024 (July 15th).

Griswold was 19 years old when the trial court called the case for the hearing on July 15th. 2RR:6. Before the hearing began, Appellant argued Texas Human Resources Code section §161.101 prevented the court from allowing HHSC's intervention before first determining Appellant's "suitability" as a prospective guardian of Griswold. 2RR:15, 18. Evidence regarding HHSC's intervention was offered by HHSC through Beth Boon and Robin Hewitt without objection to the court proceeding or to hearing from either witness. 2RR:21, 32. Appellant then testified regarding her suitability without objection. 2RR:44–45. At the conclusion of Appellant's testimony, the court asked if she had any other witnesses to which Appellant replied no and proceeded to rest—all without any objection or a request for continuance for any reason. 2RR:76.

In her closing argument, without objection to proceeding, Appellant again argued her suitability should be determined prior to a determination on the intervention of HHSC. 2RR:79. Appellant also did not object during the closing

arguments of HHSC or the AAL despite their requests or recommendations regarding Appellant's suitability. 2RR:77–78, 80–82. The trial court found Appellant unsuitable to be Griswold's guardian and granted HHSC's intervention. 2RR:83; 1CR:235. Once Appellant was found to be unsuitable, the court then immediately held a hearing regarding HHSC's Application—the only remaining application before the court. 2RR:83. Appellant was present but made no objection to the court proceeding. 2RR:85. HHSC again presented Boon as a witness. 2RR:86. Appellant made evidentiary objections, 2RR:89, was permitted to cross–examine the witness, 2RR:96, and again indicated she "[did not] have anything further," 2RR:100. However, Appellant made no objection when HHSC requested the court take judicial notice "of everything in the Court's file at this point." 2RR:87. The court did "take judicial notice of all the documents in the Court's file" as requested by HHSC, which included the affidavits of Boon and Hewitt as well as Griswold's Determination of Disability Evaluation Report (DID. *Id.* The trial court granted HHSC's guardianship application and appointed HHSC to serve as Griswold's permanent guardian. 2RR:100–101; 1CR:240.

On July 26, 2024, Appellant requested Findings of Fact and Conclusions of Law, which were timely filed by the court on August 20, 2024. Appellant filed an unsworn motion for new trial, 2CR:5–191, and then an unsworn supplemental motion for new trial (Motions). 2CR:191–199. Appellant's Motions were heard on

September 18, 2024. On that same day, Appellant filed her Designation of Resident Agent. 2CR:451–452. As the hearing was held on unsworn motions, no new evidence was considered. 3RR:17, 19[3]. On October 8, 2024, the court signed an Order Denying Motion and Supplemental Motion for New Trial. 2CR:453. The following day, Appellant filed her Notice of Appeal of "the Court's orders from July 15, 2024, August 1, 2024, and October 8, 2024." 2CR:456–457. However, Appellant's brief filed on March 4, 2025, does not include the court's October 8, 2024, Order Denying Motion and Supplemental Motion for New Trial in the appendix as required by Texas Rule of Appellate Procedure 38.1(k)(1)(A) nor does she include any argument regarding appellate review thereof or citations regarding this order as required by Texas Rule of Appellate Procedure 38.1(i).

---

[3] A motion for new trial is not a prerequisite to a complaint on appeal but a point in a motion for new trial is a prerequisite for a complaint on which evidence must be heard. Tex. R. Civ. P. 324(a) and (b). However, facts alleged for the first time in a motion for new trial must be sworn or otherwise supported by an affidavit to be considered competent evidence of the fact. *See Wiseman v. Levinthal*, 821 S.W.2d 439, 442 (Tex. App.—Houston [1st Dist.] 1991) (citing *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966)).

TO THE HONORABLE FIFTEENTH COURT OF APPEALS:

## STATEMENT OF FACTS

On May 16, 2023, Appellant filed her application requesting appointment as guardian of Griswold, an incapacitated adult, as his biological mother. 1CR:5–11. At the time of her Application, Griswold was 18 years old and in extended foster care. *See* 2CR:438, 2RR:32–33. At no point in her application did she include that her parental rights to Griswold were previously terminated. *See* 1CR:5–11.

While Appellant is Griswold's biological mother, after a series of allegations, investigations, and findings with the Texas Department of Family and Protective Services' (TDFPS) Child Protective Services (CPS), Appellant's parental rights to Griswold were terminated on September 18, 2012. 1CR:209–216, 217–222, 2RR:53. Appellant's termination was voluntary and based upon a relinquishment of her parental rights to Griswold and his sister. *See id.* At the same hearing in 2012, Griswold's alleged biological father, Rudolph Pharis, wholly made default and his rights were terminated for failing to establish paternity. 1CR:219. Griswold lived with Raymond and Christina Sanchez, his foster parents, from July 7, 2012, 1CR:212, through the time of the hearing on July 15th, and was in extended foster care after he turned 18. 2RR:33; 1CR:214. Extended foster care is available for children when they turn 18 enabling them to extend their time in foster care until they are 21 years old. *See id.*; Tex. Fam. Code §263.602.

1

In 2007, Appellant admitted to a CPS investigator she attempted suicide while caring for Griswold and she was under the influence of drugs while caring for Griswold (then 2) when a stove fell on him[4]. 1CR:212. Despite being a significant event, Appellant testified she did not recall the incident but added, "I know I was asleep. My mom was home, but then I guess she wasn't. I don't recall that. I was – I was high." 2RR:56. Although she does not recall the incident, she states she does recall she was asleep and high while it happened. *Id.* An investigation by CPS determined Appellant was responsible for physical abuse of Griswold and an agreement was reached to place him with Appellant's mother, Victoria Farris. 1CR:212.

In 2008, law enforcement responded to a call regarding a missing child. Griswold (3 years old) was found approximately one mile from home "running toward a very busy intersection" roughly 100 yards away. 1CR:4. Neither Appellant nor Farris knew how Griswold left the residence. *Id.*; 2RR:57. CPS determined Appellant and Farris were responsible for neglectful supervision of Griswold. *Id.*

In 2010, Farris was found responsible for physical neglect of Griswold (5 years old). Appellant, who was recently incarcerated for possession of

---

[4] Appellant did not object to the affidavits of Boon or Hewitt or their testimonies, despite cross- and recross- examination. 2RR:43-44. Moreover, Appellant's and Farris' CPS history was information relied upon by HHSC in making their determination regarding her ability to be appointed guardian. Tex. Hum. Res. Code §161.101.

methamphetamines, allegedly made concerning statements—that she would give Griswold "something" to make him sick and then call CPS to make the placement "look bad." Then, in 2011, there were allegations Griswold had bruises while in the care of his placement. During Appellant's visitation, she took him to the hospital due to the bruising but because the line was long she took him back to her home. 1CR:214. An Order of Protection was issued and CPS was appointed temporary conservator of Griswold. Reunification efforts were not successful and Appellant's parental rights were terminated in 2012 after she signed a voluntary relinquishment of parental rights. 1CR:214. Appellant testified she believed it was in his best interest to relinquish her rights because her substance abuse issues and she was going to prison. 2RR:45, 54.

Griswold has severe autism, 2RR:68, and is nonverbal, 2RR:30. He must always be supervised to ensure his safety, 2RR:30, and he regularly takes significant amounts of medication, 2RR:73, 1CR:6, 203–208. Griswold does not have the ability to care for himself, requires assistance with all aspects of life, and meets the definition of "full incapacity." 1CR:210. Indeed, "[w]ithout a guardian in place for [] Griswold, he could easily become a target for abuse, neglect, and exploitation." 2RR:31. The court took judicial notice of Griswold's DID on file. 2RR:90. There is

3

no dispute that a guardianship is appropriate for Griswold and in his best interest. *See* Tex. Hum. Res. Code §161.101; *see also* AB:11[5] and 2RR:22, 34, 68, 89, 95.

Appellant lived in Texas at the time she applied, 1CR:5, but testified she moved to Arkansas a year prior to the hearing, 2RR:60. She lives with her mother, Farris, with whom she lived off and on for some time prior to moving to Arkansas together. 2RR:61, 72. Farris also has CPS history regarding Griswold. 1CR:212–214. In 2010, Farris took Griswold with her to court for an arraignment hearing for a possession of marijuana charge. 1CR:213. Farris became agitated and the judge ordered Farris to drug test—she was positive for methamphetamines, amphetamines, marijuana, and opiates. *Id*. At that time, Griswold was placed with a family friend. 1CR:213. However, Appellant testified Farris has been clean over five years. 2RR:68. Further, despite not living in Texas at the time of the hearing or for the year preceding the hearing, Appellant did not file a Designation of Resident Agent until September 18, 2024, as required[6]. 2CR:451–452.

Appellant testified she relinquished her parental rights because she had drug issues and was going to prison. 2RR:45. She explained she now owns a home in

---

[5] References to Appellant's Brief in this appeal are cited as AB followed by the page number.
[6] Appellant represents that she now has designated a Texas agent and refers to 2CR:451. However, this was filed the same day as the hearing on her motion for new trial. Her motions for new trial were unsworn and so any allegation of new facts is incompetent evidence. *See Wiseman*, 821 S.W.2d at 442.

Arkansas and her sole source of income is a bakery she runs out of her home[7]. 2RR:48. She testified she "studied about autism" while in prison and completed several hours of instruction at autism.org. 2RR:49. Appellant also filed her certificate of completion of the Texas Guardianship Training. 1CR:35. However, Appellant also testified the last time she saw Griswold was two years ago, 2RR:49, 73, and admitted it would be "more detrimental just to take [Griswold] away from [the foster parents]." 2RR:64. Appellant admitted her one visit with Griswold two years prior was the only time she saw him since her rights were terminated, 12 years prior. 2RR:62–63. She testified she was in jail "off and on" for four and a half years and ultimately served 11 months in prison, ending on May 1, 2013, when she began 5 years' probation. 2RR:45–46. She testified she "was so bad on drugs," 2RR:54, 56, and that she "put [her] kids on the back burner while [she] was on drugs, and that's not fair to them," 2RR:59.

## SUMMARY OF THE ARGUMENT

HHSC, pursuant to Texas Human Resources Code sections 161.101(a) and 161.102(a), received a referral from CPS regarding Griswold, an incapacitated person in extended foster care. Upon determining there were no less restrictive alternatives to guardianship available due to his severely high needs and there were

---

[7] Appellant claims she is now a real estate sales associate, AB:10, but was not at the time of the hearing and therefore, it was irrelevant to the trial court's rulings and outside the consideration of this Court.

no alternative persons willing *and able* to provide the same services as HHSC, HHSC filed an application for guardianship as required section 161.101(a). As Appellant's Application was already pending, HHSC moved to intervene into Appellant's case and filed HHSC's Application.

When the case was called for a hearing on HHSC's intervention, Appellant argued section 161.101(c) prevented HHSC from intervening into her suit because she is an "available" and "willing" alternative guardian. She claims the court had to first find her unsuitable before permitting HHSC's intervention. The hearing began and HHSC presented evidence regarding the intervention as well as its requirement to file an application under sections 161.101(a) and 161.102(a). Appellant then testified regarding her suitability and upon conclusion, stated she had no additional witnesses or evidence. Prior to closing arguments, the court indicated Appellant "opened the door" to consideration of her suitability and the court heard sufficient testimony on the matter. Appellant did not object but instead again argued in closing the court must determine her suitability to serve prior to permitting HHSC to intervening. The court granted HHSC's request to intervene and found Appellant unsuitable. The court then immediately held a hearing on HHSC's Application—the only remaining application before the court—and it was granted. There is no dispute Griswold is an incapacitated person or that the appointment of a guardian for Griswold is necessary and in his best interest.

Appellant also argues the court should not have permitted HHSC's intervention because she had no notice for the court to consider her suitability, which prevented her from presenting additional witnesses and evidence and from requesting a jury trial. She also claims that as Griswold's mother, she is entitled to preference over HHSC as a guardian—shifting the burden to HHSC to show she was unsuitable. Finally, she argues the court erred in appointing HHSC as guardian because the court failed to adhere to procedural requirements (to which she did not object at the hearing) such as denying her request to appoint a GAL for Griswold, having the hearing without Griswold present, having her investigated as a potential guardian, and failing to rule in Griswold's best interest.

However, Appellant misapplies sections 161.101 and §161.102. These sections help guide HHSC in determining whether it is required to apply for guardianship of an incapacitated person. This determination by HHSC is wholly separate and apart from the court's determination on HHSC's request to intervene or the court's determination on Appellant's suitability. Nothing in these sections require a finding or determination from the court prior to HHSC filing its application. Moreover, HHSC can intervene as an interested party without filing an application under Texas Estates Code § 1055.003, which highlights Appellant's misplaced reliance on sections 161.101 and 161.102 as they only address HHSC's

determination of whether HHSC is required to file an application and have nothing to do with evaluation of HHSC's intervention.

In the alternative, if the sections did apply to an evaluation of HHSC's intervention—which they do not—Appellant essentially argues *anyone* (regardless of ability or suitability) can beat HHSC in a race to the courthouse and block HHSC's participation in the court's consideration of that application so the applicant can proceed "without interference from HHSC." AB:21. First, this interpretation ignores the "able" piece of "willing and able" as required in section 161.102(a). And second, this unreasonable, ineffective, and inefficient interpretation would require HHSC to wash its hands of an incapacitated person upon the arrival of *anyone* who was willing to be his guardian—including a felon or a child molester—even when HHSC had reason to believe the potential guardian was potentially dangerous, disqualified from serving, or was otherwise ineligible to serve. 2RR:18. This interpretation also ties the hands of HHSC by preventing it from participating in cross–examination or presenting any controverting evidence to the court for consideration rendering informed decisions for the best interest of the proposed ward impossible.

Regarding her suitability, Appellant again misses the mark and the court properly found she was unsuitable. Notice requirements in the Texas Rules of Civil Procedure do not apply to guardianship cases where there is statutory conflict. Generally, the Estates Code does not require a person be given notice in a

guardianship proceeding (unless requested of the clerk or required by the court) and the court can take any action on an application for guardianship at any time after the expiration of the Monday following the 10–day period beginning on the date the service of notice and citation was made. But even if notice was required, which it was not, Appellant waived notice by "opening the door" and submitting the issue of her suitability to the court that day but also by failing to object to the court considering her suitability. Once before the court—due to her own misunderstanding of the law, on her own request, and by submitting herself to trial by consent—any determination by the court on an application for guardianship is reviewed under an abuse of discretion standard. The court is required to appoint an *eligible* (person as guardian and to consider the incapacitated person's circumstances and best interest. As long as *some* evidence of substantive and probative character supports the court's decision, there is no abuse of discretion. The court found Appellant unsuitable to serve as Griswold's guardian.

Additionally, Appellant's parental rights to Griswold were previously terminated. As such, her application is not *entitled* to preferential consideration because she is no longer family or next of kin in the eyes of the law. Where there is no applicant entitled to preference, the court gives equal consideration to any applicant eligible to serve as guardian. The evidence before the court showed that although Appellant testified she was clean and stable, Appellant previously had a

9

significant substance abuse issue and frequent imprisonment, Appellant's parental rights were terminated, Griswold has severe high needs and is nonverbal and does not react to change well, Appellant visited with Griswold one time in the 12 years prior to the hearing, Appellant was also disqualified and ineligible at the time of the hearing because she moved out of state and had no resident agent on file, and Appellant offered no corroborating evidence regarding her current circumstances other than her certificate of completion of the required guardianship course. HHSC does not generally consider a person whose parental rights to the proposed ward have been terminated as an "able" potential guardian but HHSC was also concerned about Griswold's severely high needs coupled with the lack of knowledge and experience Appellant had with those needs considering her rights were terminated when he was 7 years old and at the time of the hearing he was 19, as well as her living out of state, and having little more than her own testimony regarding her current circumstances. The court properly and within its discretion found Appellant was unsuitable to be Griswold's guardian. This finding does not necessarily shut the door to Appellant should circumstances change and she applies to be considered in the future as a successor guardian. Importantly, Appellant focuses on changes she has made in her life and disregards the needs and best interests of Griswold—she is not only unfamiliar with his daily needs and services but she did not inquire on cross–examination regarding these items either. As she and her mother live together

10

and are both recovering addicts, some inquiry into the responsibility she is requesting would show insight into Griswold's best interest, her suitability, and the protection of her and Farris's sobriety. Nevertheless, as Appellant was found to be unsuitable, she was disqualified and therefore ineligible to be appointed as Griswold's guardian. The court then properly held an evidentiary hearing, without objection, on HHSC's Application—the only remaining application before the court. The court then appointed HHSC as guardian finding HHSC was suitable, and the appointment was in the best interest of Griswold. Neither Appellant nor the AAL presented controverting evidence.

The court properly granted HHSC's request to intervene, properly found Appellant unsuitable to serve of Griswold, and properly granted HHSC's Application. This Court should affirm the trial court's rulings.

## STANDARD OF REVIEW

"Texas [] vests the trial court with broad discretion to decide . . . ward's best interests." *In re Guardianship of Tonner*, 514 S.W.3d 242, 246 (Tex. App.—Amarillo 2014). The review of an appointment of a guardian is under an abuse of discretion standard. *See In re Tyler*, 408 S.W.3d 491, 495 (Tex. App.—El Paso 2013); *see also In re Guardianship of Thrash*, 2019 WL 6499225, at *5 (Tex. App.—San Antonio 2019) (citing *In re Guardianship of Boatsman*, 266 S.W.3d 80, 88 (Tex. App.—Fort Worth 2008, no pet). "A trial court abuses its discretion if it acts without reference

11

to any guiding rules or principles or if it acts in an arbitrary or unreasonable manner." *In re N.L.D.*, 412 S.W.3d 810, 814 (Tex. App.—Texarkana 2013, reh over.) (citing *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007)).

"In guardianship proceedings, legal and factual sufficiency of evidence are not independent, reversible grounds of error; instead, they are factors to consider in assessing whether there was an abuse of discretion." *Thrash*, 2019 WL 6499225, at *5 (citing *In re Guardianship of A.E.*, 552 S.W.3d 873, 877 (Tex. App.—Fort Worth 2018, no pet.)); *see also Barton v. Barton*, 584 S.W.3d 147, 153 (Tex. App.—El Paso 2018, no pet.). "A trial court [] abuses its discretion by ruling without supporting evidence." *Id.* (citing *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012); *see also A.E.*, 552 S.W.3d at 876. "To determine whether the trial court abused its discretion, we consider the record as a whole." *Trimble v. Tex. Dep't of Protective & Regulatory Servs.*, 981 S.W.2d 211, 214 (Tex. App.—Houston [14th Dist.] 1998). "We view the evidence in the light most favorable to the trial court's decision." *In re Keller*, 233 S.W.3d 454, 459 (Tex. App.—Waco 2007) (citing *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 536 (Tex. App.—San Antonio 2004)).

However, it is not an abuse of discretion "when the trial court basis its decision on conflicting evidence and some evidence of substantive and probative character supports its decision." *A.E.*, 552 S.W.3d at 876–877 (citing *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009)).

# ARGUMENT AND AUTHORITIES

## I.     The trial court properly permitted HHSC's intervention into Appellant's Application.

In Appellant's first issue presented to the Court, she claims the trial court erred when it permitted HHSC's intervention because "the statute makes clear that when a person is available to serve as guardian of a ward, HHSC must allow that person to apply for guardianship first." AB:19. However, Appellant misapplies and confuses statutes found in the Texas Human Resources Code and the Texas Estates Code. Moreover, Appellant fails to demonstrate the court's granting of HHSC's intervention was an abuse of discretion.

### A.     Texas Human Resources Code §§161.101(a) and 161.102(a), in conjunction with the Texas Estates Code and 26 Texas Administrative Code §361.23, provides direction to HHSC regarding its application for guardianship of a proposed ward when it receives a referral from CPS.

Texas Human Resources Code section 161.101(a)[8] provides that where HHSC receives a referral from CPS of a minor[9] in its custody and HHSC determines the

---

[8] References to the "department" in Texas Human Resources Code chapter 161 means the Department of Aging and Disability Services (DADS). Tex. Hum. Res. Code §161.001(4). The legacy agency guardianship program was legislatively transferred from TDFPS' Adult Protective Services (APS) to the legacy DADS in 2005. *See* Acts 2005, 79th Leg. (S.B. 6, Art 3), eff. Sept. 1, 2005. DADS was consolidated into HHSC when the agency guardianship program transferred in 2016 and is now referred to as the HHSC Office of Guardianship Services (OGS). *See* Tex. Gov't Code §531.0202 (Acts 2015, 84R, S.B. 200, Section 1.01) eff. Sept 1, 2016. References to DADS in the law now mean HHSC. *See* Tex. Gov't Code §531.011.
[9] The Texas Family Code, which governs CPS conservatorships, defines a "child" as a person who "is under 22 years of age and for whom [CPS] has been appointed managing conservator of the child before the date the child became 18 years of age." Tex. Fam. Code §264.101(f)(1).

individual is incapacitated and there are no less restrictive alternatives[10] to guardianship available, HHSC shall file an application for guardianship. *See also* Tex. Est. Code §§1002.017, 1002.015(1).). Importantly, section 161.101(a) refers to Human Resources Code section 48.209(a)(1), which provides for referrals from CPS to HHSC. Section 161.101(a) essentially charges CPS with the responsibility of seeking provision for after an incapacitated minor in its custody ages out of care.

Here, Griswold has special needs and was in extended foster care at the time Appellant's Application was filed, enabling him to remain in the foster home in which he had been placed since 2012 through the age of 21. 2RR:33. There is no dispute Griswold is incapacitated, that no less restrictive alternative to guardianship is available, and that it is in Griswold's best interest to be appointed a guardian. *See* 2RR:37, 2CR:440; *see also* Tex. Est. Code §1101.101(a)(1).

An exception to the requirement that HHSC file for guardianship under section 161.101(a), is found in section 161.102(a). If HHSC becomes aware of a guardianship program, private professional guardian, or other person *willing and able to provide the guardianship services that would otherwise be provided by HHSC*, then HHSC shall refer the incapacitated individual to that alternate potential

---

[10] A "less restrictive alternative to guardianship" calls on the court to consider whether the prospective ward would be able to provide for his own basic needs, care for his own health, or manage his own financial affairs with additional "supports and services" or a less restrictive legal measure, such as a power of attorney or a trust, that would "encourage the development or maintenance of maximum self-reliance and independence." *See* Tex. Est. Code §§ 1001.001(b), 1002.031, 1002.015.

guardian. *If* HHSC makes a determination that a willing potential guardian is also able, then it is no longer required to file an application. This does not prevent HHSC from also intervening in that person's application, presenting information to the court regarding that applicant, or filing its own application—it only relieves HHSC from its requirement to file an application[11]. Importantly, this determination—which applies at the prelitigation stage regarding HHSC's requirement to file an application—is wholly HHSC's determination. *See* Tex. Hum. Res. Code §161.102.

Here, HHSC found that although Appellant was willing, she was not an able applicant. It is important to note there was no dispute that Griswold was incapacitated and that there were no less restrictive alternatives due to the severity of his needs. 2RR:22, 30–31, 34, 95. Therefore, in finding section 161.102(a) did not apply, HHSC determined it was required to file its own application under section 161.101(a). As Appellant's application was already pending, 1CR:224–226, HHSC filed a request to intervene as well as its application for guardianship. 2RR:36, 1CR:193–226. HHSC's determination is further directed by rules adopted in Texas Administrative Code (TAC) Title 26, Part 1 chapter 361, section 361.23: where HHSC determines a person is incapacitated and no less restrictive alternatives are

---

[11] *Cf.* Section 161.101(c)(2), which does not apply but strictly for the purposes of comparison in interpreting statutory language, where there is a referral from *APS*, if available, HHSC "shall pursue the less restrictive alternative *instead of* [filing]." Tex. Hum. Res. Code §161.101(c)(2) (emphasis added).

15

available, HHSC attempts to identify an alternate guardian to HHSC who is *willing, able, and suitable* to serve.

In her brief, citing section 161.101(c), Appellant claims "[t]he only determinations HHSC can make are whether an individual needs a guardianship and whether there is a person available to serve as guardian." AB:27. Appellant incorrectly concludes "HHSC's inquiry into [the] guardianship [] should have ended when HHSC became aware of [Appellant's] Application." *Id*. However, Appellant's reliance on section 161.101(c) is misplaced and she misreads and fundamentally misunderstands the function of these statutes.

1. **Appellant incorrectly relies on Texas Human Resources Code §161.101(c) but this reliance is harmless.**

First, subsection (c) does not apply here. Whereas subsection (a) applies to referrals from CPS per section 48.209(a)(1), subsection (c) applies to referrals from TDFPS' Adult Protective Services (APS) per section 48.209(a)(2). Section 161.101(c) applies to APS referrals of an elderly person or person with a disability who APS believes is incapacitated and who has been found by [APS] to be in a state of abuse, neglect, or exploitation. Referrals of abuse, neglect, or exploitation of elderly or disabled persons are made to APS. Tex. Hum. Res. Code §§48.051, §48.204. Griswold was not referred by APS, is not elderly, and was not found in a state of abuse, neglect, or exploitation. Consequently, sections 161.101(b), (c), (c−1), and (c−2) do not apply. However, this reliance is harmless as the exception found in

16

section 161.102(a) applies to both referrals—which leads to the same result—HHSC must apply for guardianship because it determined Appellant is not able to serve a guardian. *See* Tex. Hum. Res. Code §161.102(a) and 26 TAC §361.23(d).

### 2. A person "willing and able" does not mean *anyone*.

Second, Appellant misreads "willing and able" to mean that if someone is "available" or otherwise "ready and willing," that is sufficient. AB:22. Appellant completely and fatally ignores the "able" qualification, which is important because "willing and able" does not mean *anyone*—it requires more which is clear from the plain language of the statute. The Legislature chose to use more than just the word "available" but also "willing and able." *See In re A.D.P.*, 281 S.W.3d 541, 549 (Tex. App.—El Paso 2008) ("One provision [of a statute] should not be given a meaning out of harmony or inconsistent with other provisions."). While "able" is not defined in the Estates Code, Webster's Online dictionary defines able as "having the freedom or opportunity to do something." A proposed guardian who is found unsuitable by the court does not have the freedom or opportunity to serve as guardian. *See* Tex. Est. Code §1104.352.

Appellant appears to argue that as long as there is someone willing and available, HHSC's involvement should come to a screeching halt—even if that person is not able, suitable, or otherwise eligible to serve as guardian. It is unreasonable to require HHSC to wash its hands of an incapacitated person anytime

17

*anyone*—including "a felon" or "a child molester," 2RR:18—wants to be his guardian regardless of their knowledge of and experience with the incapacitated person's needs, their familiarity with that person, their criminal and/or substance abuse history, their ability to care for the person, or even the best interest of the incapacitated person. It is reasonable for HHSC to also consider factors it knows will render a potential guardian ineligible to be appointed by the court in deciding whether HHSC is required to apply for guardianship with the court. Indeed, an unsuitable person would also be *unable* to be another's guardian.

Appellant's misinterpretation would require HHSC to wait to apply for guardianship so another could first be considered *even where HHSC knows that person is ineligible to serve*—all someone would have to do is beat HHSC in a race to the courthouse steps. This flies in the face of the requirement to file imposed on HHSC in section 161.101(a) and, as a practical matter, a waste of resources given the court would go through its entire process (separately for each applicant) only to find someone unsuitable or otherwise ineligible to serve. It would not be in a proposed ward's best interest to remain in limbo whilst ineligible would–be guardians are considered one by one. This interpretation also deprives the court of the ability to consider all the facts in making its appointment and of the benefit of cross–examination, which would make a determination of best interest impossible.

### 3. HHSC determined Appellant is not an "able" alternate guardian and therefore, properly filed its intervention and application.

Neither the Texas Human Resources Code nor the Texas Estates Code include requirements for HHSC in determining whether an alternative person is "able" pursuant to section 161.102(a). It is HHSC's practice to consider a parent whose rights are terminated as unable to provide the services needed by the incapacitated person. 2RR:25. While it is true there is not a statute disqualifying a person as a guardian solely because their parental rights have been terminated, there is no provision prohibiting HHSC or the court from considering a parent's termination. Indeed, a person's prior concerning conduct as a parent is a relevant consideration.

Appellant testified she was "ready and willing" to serve as Griswold's guardian, 2RR:15, but as discussed *supra*, this is not the standard for HHSC to consider when filing. Although she claims in her brief she "has the means and training to care for him and give him individual attention and most importantly, the desire to care for him," AB:40, this "new fact" was offered after trial. Moreover, she had only seen Griswold once since she relinquished her parental rights in 2012, 2RR:62–63. When her rights were terminated, Griswold was 7 years old and at the time of the hearing in this case, he was 19. Additionally, at the time of the hearing, Griswold remained in the care of his long–time foster parents, Mr. and Mrs. Sanchez, and Appellant acknowledged it would not be in Griswold's best interest to be pulled

from there abruptly. 2RR:64. It is notable that not once in her testimony or brief does Appellant claim to be able to provide the services that would otherwise be provided by HHSC—the standard in section 161.102(a) for when HHSC is determining if it is required to file an application for guardianship—or that she is suitable, as required for appointment by the court. Indeed, it would be impossible for her to demonstrate an ability to provide the services Griswold needs since she does not know what services he requires.

HHSC considered Griswold's high needs along with the fact Appellant had a severe history with substance abuse, 2RR:54, and imprisonment, 2RR:56, and that Appellant has seen him once in the past 12 years. HHSC determined Appellant was not an able person pursuant to section 161.102(a) and thus, filed to intervene in Appellant's open case for guardianship and filed HHSC's Application as required by section 161.101(a). 2RR:15.

Importantly, this analysis into Appellant's misunderstanding regarding sections 161.101 and 161.102 is a red herring. HHSC's determination on whether or not it is required to file an application *has nothing* to do with the court's consideration of whether HHSC should be permitted to intervene (Appellant's first issue presented to this Court) pursuant to Estates Code section 1055.003 or whether the court determines Appellant is suitable pursuant to Estates Code section 1104.352.

4. **Appellant misunderstands the function of Texas Estates Code §§161.101 and 161.102.**

20

At the hearing, Appellant argued, citing section 161.101, that "[t]here need[ed] to be an adjudication as to [Appellant's] suitability before HHSC [can] intervene and participate," 2RR:18, reasoning that HHSC could not intervene if there was someone "willing" to serve, 2RR:15. Importantly, Appellant misunderstands the function of these sections and conflates them with both Estates Code section 1055.003 on interventions and section 1104.352 on suitability. HHSC first determines whether or not it is required to file. Once it applies, if another case is pending, the court then considers HHSC's request to intervene. If HHSC's intervention is granted and no applicant is entitled to preference, the court considers all pending applications and "shall appoint the eligible person who is best qualified to serve as guardian." Tex. Est. Code §1104.102(3)(C).

Sections 161.101 and 161.102 provide that *if* HHSC makes a determination that a willing potential guardian is also able, then it is no longer *required* to file an application. Although HHSC does not typically file an intervention when it determines an alternate person is appropriate, nothing in these sections prevent HHSC from intervening in that person's application, presenting information to the court regarding that applicant, or filing its own application—it only relieves HHSC from its requirement to file an application. Similarly, if HHSC determines a person is not "willing and able," nothing in these sections prevents that person from filing an application or intervening into HHSC's application.

21

Of note, sections 161.101 and 161.102 *do not* provide an exception to filing due to another person filing first—this would have the bizarre result of putting the determination of whether HHSC files with a third party. An alternate scheme preventing HHSC's participation in Appellant's Application serves only Appellant's best interest and not at all the best interest of Griswold. The Legislature, through its plain language, did not create nor intend this untenable result. Simply put, these sections serve one function—when HHSC gets a referral of an incapacitated person, is it required to file an application for guardianship or not.

Sections 161.101 and 161.102 have absolutely nothing to do with the court considering a request to intervene. These sections apply to the determination HHSC makes on whether there is a less restrictive alternative or a willing and able alternate guardian impacting whether HHSC files an application for guardianship. In contrast, Estates Code section 1055.003 applies to the determination the court makes on whether an interested person should be permitted to intervene. Sections 161.101 and 161.102 do not insert the court in HHSC's decision to file and section 1055.003 does not insert HHSC's determination in the court's consideration of an intervention request. Indeed, the court has no jurisdiction in a matter not yet before the court. It is impossible for the court to participate in HHSC's filing decisions (*e.g.* Appellant's pre-filing requirement of the court's finding of suitability) since by definition, the matter has not yet been filed. This would also be an infringement on the doctrine of

separation of powers. The functions of these statutes are wholly separate and apart from each other. Importantly, *not one* of these sections, even the applicable intervention statute section 1055.003, requires a finding by the court on the suitability of one applicant before another applicant can participate.

Appellant appears to reason that only one application can be before the court at a time—nothing in the statutes supports this misinterpretation. Indeed, the court is permitted to consider more than one application at a time. Section 1104.102 explains that when there is more than one application for guardian, some applicants are entitled to preferential consideration and where no applicants are entitled to preference, "the court shall appoint the eligible person who is best qualified to serve as guardian." Tex. Est. Code §1104.102(3)(C).

Appellant's contention that HHSC cannot intervene where there is someone willing to serve is simply incorrect. However, we do not reach that analysis because, for the purposes of section 161.102(a), HHSC determined Appellant was not an "able" person.

**5. Appellant also has misplaced reliance on Texas Human Resources Code § 161.108 and Texas Estates Code § 1203.151, which apply to successor guardianships.**

Appellant also cites Human Resources Code section 161.108 and Estates Code section 1203.151 on successor guardianship where this case is an original proceeding to appoint a guardian. Appellant's references to these sections are

irrelevant and misplaced. AB:23–24. Even if the sections were applicable, which they are not, a similar analysis applies here as with sections 161.101 and 161.102 *supra*. Section 161.108 and section 1203.151 provide that where HHSC is the guardian of an incapacitated person and then becomes aware of a person's willingness and ability to serve as a successor guardian, HHSC shall notify the court[12]. AB:23–24. Section 161.108 also requires HHSC to proactively review the guardianship annually and determine whether a more suitable person is willing and able to serve as successor guardian. Tex. Hum. Res. Code §161.108. This section does not apply as this case is an original proceeding and not a request for a successor guardian. Nonetheless, the determination in this section remains with HHSC. Moreover, the key terms in this section are familiar—"more suitable" and "able." It appears Appellant continues to fail to assign any significance to the inclusion of the word "able" in this statute. If HHSC determines there is not a more suitable or able person, HHSC is not required to act. This agency determination again only governs whether HHSC is required to notify the court. Appellant would still be free to request to be appointed successor guardian. Ultimately, this section is not relevant here because HHSC was not the proposed ward's guardian at the time of the hearing.

---

[12] Because a section 161.108 annual review is an agency determination and may result in notification and subsequently a successor guardianship application, HHSC cannot be compelled to make this notification contrary to its own determination or file an application for successor guardianship. *See* Tex. Hum. Res. Code §161.101 (the department (now HHSC) may not be required by a court to file an application for guardianship).

**6. Appellant's citation of Texas Estates Code § 1251.011 and Texas Government Code §531.055 are also misplaced.**

Appellant attempts to rely on Estates Code section 1251.011 and Texas Government Code section 531.055 to argue HHSC should only become a guardian as a last resort. However, these code sections do not apply in this case.

Section 1251.011 says that HHSC should only be appointed as a *temporary* guardian as a last resort. A temporary guardianship is only appropriate where the court has reason to believe that the person, the person's estate, or both require the immediate appointment of a guardian. Tex. Est. Code §1251.011. Appellant's interpretation is concerning—she appears to argue that *the court* would need to consider the suitability of any applicant for temporary guardianship before HHSC could apply. This is concerning because temporary guardianships are reserved for immediate needs where time is of the essence. Appellant would have a proposed ward to have delayed relief from HHSC waiting to apply in hopes or in case the court might first qualify some alternate guardian that may or may not come forward. Here, this code section is not relevant as the court did not appoint a temporary guardian for Griswold. However, the application of Appellant's position to this section highlights the impractical and unreasonable nature of her claims.

In Part II of her brief, claiming HHSC should serve as a guardian only as a last resort when no alternative person is available, Appellant includes a citation to Texas Government Code section 531.055 (repealed). It is unclear why Appellant

includes this citation in this section of her brief as she offers little more than a recitation of the code section. Nonetheless, this code section, entitled "Memorandum of Understanding on Services for Persons Needing Multiagency Services," requires that when multiagency services are utilized, a joint memorandum of understanding is required to identify and coordinate services to ensure the most appropriate but least restrictive setting is utilized with use of residential, institutional, or congregate care settings only as a last resort. Tex. Gov't Code §531.055.

Appellant alleges Griswold has been removed from his foster home and placed in a residential or group home but admits she does not know to where he was removed. First, where Griswold was moved in his best interest and based on his needs and why are not relevant here because at the time of the hearing, Griswold remained in his long–time foster home, and therefore this consideration is outside the record. Second, this section is wholly inapplicable here as it refers to communication amongst agencies and is not about guardianship at all. Indeed, whomever the guardian is would have the same ability to determine Griswold's residence. This section has more to do with a ward's condition and not the choice the guardian that determines the best and most appropriate setting, which may include an institutional setting—which requires a commitment hearing—as a last resort. Again, at the time of the hearing, Griswold remained in extended foster care and so this analysis and exploration of his current circumstances are outside the

scope of this appeal. Further, this has nothing to do with HHSC being appointed Griswold's guardian[13] on July 15th.

Sections 161.101 and 161.102 require HHSC to determine if there is any less restrictive alternative to guardianship or if there is a more suitable person or program before filing an application. Estates Code section 1104.102 lists persons who are to be given a preference over other eligible and entitled applicants when the court considers more than one application, *e.g.* the proposed ward's spouse is given preference over anyone else. To the extent these sections specifically point to alternate considerations, then the appointment of HHSC should be a last resort. However, as seen in section 1104.102(3)(C), where there are no entitled persons to consider then *no preferences required*, as here, then the court should review each remaining application equally to determine the best interest of the proposed ward given the circumstances. *See* Tex. Est. Code §1104.101.

**B.** **The trial court properly granted HHSC's intervention pursuant to Estates Code §1055.003 and did not abuse its discretion.**

It is undisputed the trial court considers HHSC's intervention pursuant to Estates Code section 1055.003. 2RR:13. Except for a person with an interest adverse to an incapacitated person, "any person has the right to appear and contest a

---

[13] To the extent Appellant is claiming this section impacts the selection of a guardian, the trial court is not obligated to impose the least restrictive guardianship possible (compared to utilizing a less restrictive *alternative* to a guardianship altogether), "rather the decision is controlled by the best interests of the ward and the obligation to protect him from himself and others' control." *Tonner*, 514 S.W.3d at 246.

guardianship proceeding or the appointment of a particular person as guardian." Tex. Est. Code §1055.001; *see also Torres v. Ramon*, 5 S.W.3d 780, 782 (Tex. App.—San Antonio 1999). HHSC does not—and Appellant does not claim or demonstrate— have an interest adverse to Griswold. Section 1055.003 does not include any provision regarding a court finding of suitability of any applicant before proceeding. Therefore, as stated by Appellant, the only relevant factor for the court to consider here is whether HHSC's intervention would "unduly delay or prejudice the adjudication" of Appellant's rights. 2RR:13; Tex. Est. Code §1055.003(a)(1). "Importantly, there is no limiting language in [section 1055.003(c)] that would prohibit the trial court from weighing *more* than just (c)(1) or (c)(2) in exercising its discretion. And there is no requirement on what weight the trial court must give any consideration." *Matter of Guardianship of Browning*, 642 S.W.3d 598, 604 (Tex. App.—Eastland 2022, rev. denied).

**1.    Appellant fails to articulate how HHSC's intervention would "unduly delay or prejudice the adjudication of" Appellant's rights.**

The court, within its discretion, properly granted HHSC's motion for leave to intervene. HHSC's intervention caused no delay, as found by the court in its Findings of Fact and Conclusions of Law. 2CR:439. In fact, despite Appellant's Application being filed almost a year prior to HHSC's filing, Appellant's Application remained pending at the time HHSC filed its application. Appellant not only does not

demonstrate any prejudice, she also fails to identify any right which has been prejudiced. Appellant does claim she is entitled to preferential consideration pursuant to section 1104.102, discussed *infra*, but as her parental rights were terminated, she is not entitled to any preference.

Appellant fails to demonstrate the court granted HHSC's motion for leave to intervene without reference to any guiding rules or principles or that it acted in an arbitrary or unreasonable manner. Indeed, the low threshold for intervention in guardianship cases coupled with the concerns regarding Appellant's eligibility and ability to serve as guardian, discussed *infra*—suitability, inexperience with Griswold's needs, failure to timely file her designation of resident agent, along with her concerning history, terminated parental rights, and consideration for Griswold's best interests, qualifies as "some evidence of substantive and probative character" to support the court's decision. *See A.E.*, 552 S.W.3d at 876–877. Appellant presented evidence of her suitability prior to the court's ruling on HHSC's intervention. The court found the intervention would "not unduly delay or prejudice the adjudication of the original parties' rights" and that HHSC "does not have an adverse relationship with the proposed ward." 2CR:439.

2. **Appellant fails to cite any legal basis preventing HHSC's intervention as Human Resources Code §161.101 does not bar HHSC's intervention.**

Appellant admits that Estates Code section 1055.003 controls here. 2RR:13. At the hearing, Appellant argued "[t]here is no authority anywhere" that "gives HHSC the authority to challenge an existing guardianship application." 2RR:15. In her brief, Appellant also claims that "[p]er Texas law, the Trial Court should have denied HHSC's Petition to Intervene and allowed [Appellant's] application to proceed to resolution." AB:21. As seen in in Part I.B(1) above, the court, within its discretion, properly granted HHSC's motion for leave to intervene.

However, Appellant's almost singular attack on this ruling stems from her misplaced reliance on sections 161.101 and 161.102, discussed *supra*. In her brief, Appellant claims section 161.101(c−1) provides that HHSC must allow the available alternate guardian 70 days to apply for guardianship. AB:25−26. She also claims these statutes do "not allow HHSC to intervene in [Appellant's] guardianship proceeding . . . [or] to litigate a guardianship contest against [Appellant]." *Id*.

First, Appellant fails to show how these sections are applicable as the appropriate statute is section 161.101(a)—subsections (b), (c), (c−1) and (c−2) do not apply here. Second, even if these statutes were applicable, HHSC determined Appellant was not an able alternative guardian. Third, Appellant not only has misplaced reliance on section 161.101(c−1) but also misreads the section. Appellant misreads the statute to require time for an alternative person to file before HHSC files or intervenes. This statute simply does not say this—it provides that HHSC

30

must file not later than the 70th day after receiving an *APS* referral under section 48.209(a)(2) *but* that *if* HHSC determines that an alternative person is willing and able to be appointed the guardian of the person, HHSC must refer the incapacitated person to that person with enough time for that prospective guardian to file their application before the same 70 days expires. Tex. Hum. Res. Code § 161.101(c–1). Here, the referral was received by CPS under section 48.209(a)(1) so HHSC filed under section 161.101(a). As such, section 161.101(c–1) does not apply. Regardless, section 161.101(c–1) does not provide was Appellant claims.

Appellant's faulty and summative leap from HHSC's determination to file to the court's denial of an intervention is simply unfounded. It is unclear how Appellant got from these steps to a ban on HHSC interventions—although a referral is required where HHSC determines a person qualifies as a "willing and able" person, even if it did apply, there is no language preventing HHSC from intervening.

Simply put, these sections are not applicable in determining whether an intervention is permitted by the court, whether the court finds an applicant suitable (even prior to HHSC's application), or whether the court is required to give any applicant a preference. Appellant's contentions are wholly unsupported by law.

## II.    The trial court properly considered Appellant's suitability to serve as Griswold's guardian and properly found Appellant was unsuitable.

In Appellant's second issue, she claims the trial court erred when it found her unsuitable to serve as guardian because she did not receive timely notice of the hearing on her suitability and because "HHSC presented no evidence she is unsuitable based on her current circumstances." AB:19. However, the court properly considered Appellant's suitability and did not abuse its discretion when it found Appellant was unsuitable to serve as Griswold's guardian.

**A.    Notice of the July 15th hearing on Appellant's suitability was not required but, in the alternative, Appellant waived notice by submission.**

**1.    Texas Estates Code does not require notice of guardianship proceedings unless a request is made or the court requires it.**

In her brief, Appellant claims she "did not receive the requisite 45–day notice of trial per Texas Rule of Civil Procedure 245." AB:28. However, the Texas Rules of Civil Procedure only apply in probate matters where the rules do not conflict with a specific provision of the Estates Code. *See Shaw v. Harris Cty. Guardianship Program*, 2018 WL 3233237, at *3 (Tex. App.—Houston [1st Dist.] 2018) (citing *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 (Tex. 1983)). Estates Code sections 1051.001(a)–(b) provide that, except as required by the court, "a person is not required to be cited or otherwise given notice in a guardianship proceeding except in a situation in which this title expressly provides for citation or the giving of notice."

The Estates Code does provide for the service of citation to interested persons listed in sections 1051.102(b) and 1051.103(a). The citation must also "contain a clear and conspicuous statement informing those interested persons of the right provided under Section 1051.252 to [request] to be notified of any or all motions, applications, or pleadings relating to the application . . . or any subsequent guardianship proceeding involving the ward after the guardianship is created, if any." Tex. Est. Code §1051.102(d). Moreover, the court may act on an application for the creation of a guardianship any time after the expiration of the Monday following the 10−day period beginning on the date service of notice and citation were made, which is less than Rule 245's 45−day notice. Tex. Est. Code §1051.106.

In sum, although service of citation is required upon application, no subsequent notice is required unless a person requests notice under section 1051.252. Here, no request for notice of any proceedings was made and the court did not require any notice and therefore, no notice was required.

**2.  Notice was likewise not required for the court to consider Appellant's suitability at the hearing, but, in the alternative, Appellant waived notice.**

As stated *supra*, no notice of the hearing on Appellant's suitability was required and the court had authority to act as soon as Monday following the expiration of the Monday following the 10−day period beginning on the date service of notice and citation has been made. Tex. Est. Code §1051.106. Indeed, the court

could have set the hearing on Appellant's Application as early as July 10, 2023. Although Rule 245's 45–day notice requirement does not apply, a hearing on HHSC's intervention was set for 46 days after service of notice on Appellant.

At the hearing on July 15th, the court called the case to consider HHSC's intervention. However, as soon as the hearing began, Appellant argued that, pursuant to section 161.101, the court needed to adjudicate her suitability before considering HHSC's intervention. 2RR:15, 18. Appellant appeared to reason HHSC could not intervene if there was someone "willing" to serve. 2RR:15. The court then proceeded with trial, without objection or request by Appellant for a continuance.

First, HHSC presented witnesses without objection to the court. 2RR:21, 32. Appellant cross–examined each witness. Appellant then testified regarding her suitability, 2RR:44–45, and admitted she opened the door regarding her suitability, 2RR:55–56. At the conclusion of Appellant's testimony, the court asked Appellant if she had any additional witnesses to which Appellant said no and proceeded to rest—*all without any objection* or request for continuance or jury trial. 2RR:76. The court then proceeded to closing arguments:

> THE COURT: All right. Thank you. All right. So, let me go ahead and have brief closings from each one of you as to what you're asking me to – to do in court today. I – based on the testimony that you've presented on suitability, I'm assuming that you are requesting that the Court make that determination at this time?

MS. SMITH: I think that would probably be more appropriate for a final trial and prove up, your Honor, and I'm – I'm happy to put Ms. Jeffcoat back on. I wasn't sure if suitability was set for today, but I certainly wanted to make it clear that –

THE COURT: Well, I – I wasn't either, but when you determined that you wanted to put that evidence on, you've given me enough information to make that determination. So let's go ahead and let me have – let me hear your closing argument.

MS. SMITH: Okay.

2RR:77.

In her closing argument, without objection to proceeding or request for continuance, Appellant again argued her suitability should be determined prior to a considering HHSC's intervention. 2RR:79. Appellant also did not object during the closing arguments of HHSC or the AAL, which included recommendations regarding Appellant's suitability. 2RR:77–78, 80–82. The trial court granted HHSC's intervention and found Appellant unsuitable to be Griswold's guardian. 2RR:83; 1CR:235.

In her brief, Appellant claims that since she had no notice of the court's action on her application, she "did not have an opportunity to prepare her case for trial" . . . "to prepare or call witnesses", . . . or "to demand a jury." AB:28. However, the hearing was more than one year after Appellant's Application was filed. Moreover, Appellant also knew she was going to argue her suitability should be determined prior to consideration of the intervention as seen in her response to HHSC's request

35

for intervention filed July 11, 2024. 1CR:227. Additionally, at no time during the hearing on Appellant's suitability did Appellant request a continuance for more time to prepare her case, notify the court she had additional witnesses to present, or request a jury trial. Indeed, when the court asked if she had any additional witnesses, she replied she did not. 2RR:76.

Even if more notice was required for the hearing on Appellant's suitability— which it was not—Appellant not only failed to preserve her complaint regarding a lack of notice pursuant to Texas Rule of Appellate Procedure 33 but she also waived any notice due by submitting to the court's jurisdiction in the hearing. *See* Tex. Est. Code §1051.251, Tex. R. Civ. P. 120. Pursuant to section 1051.251, "[a] person who submits to the jurisdiction of the court in a hearing is considered to have waived notice of the hearing." Tex. Est. Code §1051.251. "A party enters a general appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court." *In Interest of D.M.B.*, 467 S.W.3d 100, 103 (Tex. App.—San Antonio 2015) (citing *Exito Electronics Co. v. Trejo*, 142 S.W.3d 302, 304–05 (Tex. 2004) (per curiam)). "In general, a party's personal appearance before a trial court indicates a submission to the court's jurisdiction . . . waiving any complaint as to service." *Id.* (citing *Mays v. Perkins*, 927 S.W.2d 222,

36

225 (Tex. App.—Houston [1st Dist.] 1996, no writ). Appellant did not enter a special appearance at the hearing.

In truth, regarding her waiver, Appellant caused her own issue by arguing her suitability must be determined before the court considered HHSC's intervention and then *also* by, without objection, presenting evidence on Appellant's suitability and submitting this determination to the court. *See In re Estate of Gaines*, 262 S.W.3d 50, 56 (Tex. App.—Houston [14th Dist.] 2008).

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *See Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). Appellant had this opportunity by presenting evidence regarding her suitability, opening the door to the court's determination of her suitability. In fact, Appellant requested a determination on her suitability be made, participated in the hearing, and presented evidence regarding her client's suitability. Appellant submitted to the jurisdiction of the court on her suitability and thereby waived notice of the hearing, if any was required. Appellant also failed to preserve this complaint by failing to object. *If* the court erred in proceeding to trial, which it did not, the error was harmless because Appellant admitted she had no other evidence or witnesses to present. 2RR:76.

**B.    The trial court did not abuse its discretion in finding Appellant was unsuitable to be appointed guardian of Griswold.**

The court shall appoint a guardian for an incapacitated person "according to the circumstances and considering the incapacitated person's best interests." Tex. Est. Code §1104.101. Section 1101.101(2)(B) requires the court to find by a preponderance of the evidence that "the person to be appointed guardian is eligible to act as guardian and entitled to appointment, or, if no eligible person entitled to appointment applies, the person appointed is a proper person to act as guardian." Appellant was neither entitled nor eligible to serve as Griswold's guardian.

Additionally, Estates Code chapter 1104, subchapter H lists "Grounds for Disqualification" of a potential guardian which includes but is not limited to inexperience, unsuitability, "notoriously bad" conduct, interests adverse to the proposed ward, or the proposed guardian is a nonresident without a resident agent. Indeed, a person cannot be "eligible" to be a guardian if they are disqualified. *See* Tex. Est. Code ch. 1104, subch. H.

Here, among other factors, since the court found Appellant was unsuitable to serve as guardian of Griswold, Appellant was disqualified from serving as a guardian and therefore ineligible to serve as guardian of Griswold.

### 1. Despite her claims to the contrary, Appellant is not "entitled" to be appointed as guardian of Griswold.

A person is entitled to be appointed the guardian of an incapacitated person if they are eligible to serve as a guardian and they are given a preferential consideration for guardianship as listed in Estates Code section 1104.102. A person's spouse is

entitled to preference over any other person if the spouse is eligible. *See* Tex. Est. Code §1104.102(1). Where the spouse of the incapacitated person is not eligible or willing, the next preference is an eligible person nearest of kin to the incapacitated person. Tex. Est. Code §1104.102(2). Finally, if "neither the incapacitated person's spouse nor any person related to the incapacitated person is an eligible person," then "the court shall appoint the eligible person who is best qualified to serve as guardian." Tex. Est. Code §1104.101(3). If there were an eligible entitled person applying and there was more than one application, the person not entitled has the burden to establish the entitled person's disqualification. *Hill v. Jones*, 773, S.W.2d 55, 57 (Tex. App.—Houston [14th Dist.] 1989, no writ). Where there is no applicant entitled to preference, "the court shall appoint the *eligible* person who is best qualified to serve." Tex. Est. Code §1104.102(3)(C).

Here, Appellant's parental rights were terminated as to Griswold in 2012 and, consequently, she was divested of all legal rights to him. *See* Tex. Fam. Code §161.206(b). Although she remains Griswold's "biological mother," in the eyes of the law she is no longer his parent, a family member, or his next of kin. In fact, the Estates Code defines a parent as "the mother of a child . . . but does not include a parent as to whom the parent–child relationship has been terminated." Tex. Est. Code § 1002.022. As such, Appellant not *entitled* to be appointed as his guardian.

Despite these facts, Appellant nonetheless included in her application several references to a parent–child relationship: "in her capacity as a person interested in the welfare of her son," "Applicant is Landen's biological mother," "Applicant . . . is entitled to be so appointed," "Landen's parents are [Appellant] . . . and Rudolph Pharis" and incorrectly lists Pharis as a person required to receive personal citation pursuant to Estates Code section 1051.103. 1CR:5–8. At the CPS termination hearing, Pharis wholly made default and his rights were terminated for failing to establish paternity. 1CR:219. Appellant's Application is also misleading as it fails to include any reference to the termination of her parental rights. Appellant continues to mislead the court in her brief where she plainly states: "As Landen's mother, Candice is Landen's nearest next of kin. By statute, Candice is entitled to be his guardian over HHSC." AB:36. Appellant also opens the argument section of her brief by misstating: "HHSC has the burden to prove by a preponderance of the evidence that [Appellant] is disqualified to serve as guardian of [Griswold]'s person." AB:20. Appellant's misrepresentations are wholly false and she attempts to change the burden in the case from one of equal comparison amongst eligible applicants, *see* section 1104.102(3), to a shift of the burden to HHSC. *See Powell v. Powell*, 604 S.W.2d 491, 493 (Tex. App.—Dallas 1980).

As Appellant was not entitled to preference, it was her burden to show she was eligible and suitable—which she failed to do.

**2. Appellant was not "eligible" to serve as guardian.**

The court must appoint a guardian "according to the circumstances and considering the incapacity person's best interests." Tex. Est. Code §1104.101. However, the preponderance of the evidence must first show "the person to be appointed guardian is *eligible* to act as guardian" and Appellant failed to carry this burden. Tex. Est. Code §1101.101(a)(2)(B) (emphasis added). Indeed, a person cannot be eligible to be a guardian if they are disqualified. *See id.*

**a. Appellant was not eligible to serve as guardian because the court found she was unsuitable and therefore, disqualified pursuant to Estates Code §1104.352.**

"A person may not be appointed guardian if the person is . . . found by the court to be unsuitable." Tex. Est. Code §1104.352; *see also Goode v. McGuire*, 2021 WL 4432534, at *8 (Tex. App.—Houston [1st Dist.] 2021). "The trial court has broad discretion in determining whether an individual is 'suitable' to serve." *Gaines*, 262 S.W.3d at 56. Appellant presented testimony to the court regarding her current circumstances and her suitability. 2RR:15, 18. Although she claims the court only considered the termination of her rights, AB:19, the Findings of Fact and Conclusions of Law shows the court found that "*[b]ased on the testimony and evidence presented . . .* [Appellant] is not suitable to serve as [Griswold's] guardian." 2CR:439. A review of the court's determination regarding Appellant's unsuitability is on an abuse of discretion standard. *See Tyler*, 408 S.W.3d at 495. Appellant fails

to demonstrate the court acted without reference to any guiding rules or principles, in an arbitrary or unreasonable manner, or was not otherwise based on evidence of substantive and probative character. *See In re N.L.D.*, 412 S.W.3d at 814; *see also A.E.*, 552 S.W.3d at 876–877. "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *See In re Estate of Luthen*, 2014 WL 47950038, at *4 (Tex. App.—Corpus Christi–Edinburg 2014) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985)).

The testimony of the three witnesses—Boon, Hewitt, and Appellant—included sufficient evidence to show the court's finding was not arbitrary or unreasonable. Appellant's parental rights to Griswold were terminated in 2012 due to her severe substance abuse and frequent incarceration. *See* 1CR:209–216, *see generally* 2RR. Although Appellant testified she had been living in Arkansas for roughly a year and owned her home where she lived with her mother, had a bakery she ran out of her home, and had been "clean" since being released from prison—for which she offered no corroborating evidence—she also admitted she had only seen Griswold once since her rights were terminated 12 years prior. Boon and Hewitt testified for HHSC regarding the severity of Griswold's condition. Griswold has severe autism, 2RR:68, and is nonverbal, 2RR:30. He must always be supervised to

ensure his safety, 2RR:30, and he regularly takes significant amounts of medication, 2RR:73. *See also* 1CR:6, 203–208. Griswold does not have the ability to care for himself, requires assistance with all aspects of life, and meets the definition of "full incapacity." 1CR:210. Indeed, "[w]ithout a guardian in place for [] Griswold, he could easily become a target for abuse, neglect, and exploitation." 2RR:31. The court also took properly judicial notice of Griswold's DID evaluation when it took judicial notice of the file without objection, 2RR:87, and then again but the second time Appellant objected—which was untimely as the document was already admitted. 2RR:87, 89–90. Further, the admission of a proposed ward's DID is well–settled as it is a requirement of filing. *See In re Guardianship of Parker*, 275 S.W.3d 623, 629 (2008). The report detailed that Griswold, who is nonverbal, "had poor eye contact and did not respond to many inquiries" and "[d]ue to his limited speech and cognitive impairments, it was not possible to complete a standardized mental status examination." 1CR:204. The report went on to state "he has limited orientation, memory, concentration, insight, and judgment." *Id*. Griswold "wears pullups at night," "[h]is fine motor skills are significantly impaired," he "pick[s] at his skin and finger nails, pull[s] strings on clothing to the point of destroying items, and once pulled a tooth out[] as he likely does not feel pain normally." *Id.* "He also has major behavior meltdowns about weekly, and smaller ones about three times a day." *Id*. "His medical diagnoses include autism, opposition defiant disorder, obsessive

compulsive disorder, mood disorder and severe intellectual/developmental disability." *Id.* He was prescribed "Risperidone, Trileptal, Amantadine, Clonidine, Prozac, Zyrtec, Melatonin, and MiraLAX." *Id.* He had also previously been found to have "clinically significant behaviors including dependency, socially avoidant, eating and sleeping difficulty, emotional difficulty, poor eye-contact, temper tantrums, disobedience, physical aggression, and acting impulsive." 1CR:203.

While it is true that prior to filing its application and with regard to the determinations in sections 161.101(a) and 161.102(a), HHSC did not consider Appellant "able" primarily because her rights were previously terminated. HHSC had concerns regarding Appellant's suitability and addressed them on cross–examination including her substance abuse history, her now living out of state, and her lack of contact with Griswold—*even if* she has not had any contact through *no* fault of her own, she still has not had contact and cannot possibly have an understanding regarding Griswold's care. HHSC had concerns regarding the severity of Appellant's prior substance abuse (as well as the substance abuse of Farris—her mother and household member) coupled with the fact that her only evidence of her current circumstances was her own testimony. HHSC also had concerns regarding the severity of Griswold's condition and the fact that Appellant had only seen him once in the past 12 years—and that was 2 years ago for a few hours at his school. Indeed, Appellant's parental rights were terminated when he was just 7 years old and

at the time of the hearing, he was 19. Despite her testimony that she studied about autism while in prison (more than 10 years ago) and completed "several hours" of learning about autism on the autism.org website, 2RR:49, she has very little knowledge about Griswold's needs or if she can actually manage them—for which she has absolutely no experience. In fact, there was no evidence she had any knowledge or experience with any of Griswold's other diagnoses at all. She also did not offer any testimony regarding her attempt to understand or seek out services for Griswold in Arkansas or whether Arkansas would accept any management or legal or financial oversight over Griswold. She did testify that she did not have a plan of where they would live if she had to live in Texas until she would be permitted to take Griswold to Arkansas but guessed she would "rent a place." 2RR:52. Appellant cross–examined HHSC witnesses but did not utilize the opportunity to learn more about him or his condition. Although she did admit that taking him abruptly from the foster home he had been in for so many years would not be in his best interest. 2RR:64. HHSC also established she was a nonresident without a resident agent—a disqualification to appointment as a guardian, discussed *infra*. 2RR:52; Tex. Est. Code §1104.357.

In her brief, Appellant argues the standard of review regarding the trial court's finding Appellant was unsuitable is sufficiency of evidence. AB:28. However, "[w]e review a trial court's appointment of a guardian under an abuse of discretion

standard." *Latham*, 1999 WL 700624, at *1 (citing *Trimble*, 981 S.W.2d at 214); *see also In re Keller*, 233 S.W.3d at 459 (citing *In re Guardianship of Finley*, 220 S.W.3d 608, 612 (Tex. App.—Texarkana 2007, no pet.)). Moreover, "[i]n guardianship proceedings, legal and factual sufficiency of evidence are not independent, reversible grounds of error; instead, they are factors to consider in assessing whether there was an abuse of discretion." *Thrash*, 2019 WL 6499225, at *5. "A trial court [] abuses its discretion by ruling without supporting evidence." *Id. Even if* the standard were sufficiency of evidence, which it is not, then "[i]n making this determination, we consider only the evidence tending to support the trial court's finding and disregard all evidence to the contrary." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 795 (Tex. 1991) (citing *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965)). "If there is any evidence of probative value to support the trial court's finding . . . we must find that evidence is legally sufficient." *Id*. (citing *In re King's Estate*, 150 Tex. 662, 664–65 (1951)). Therefore, even under a sufficiency of the evidence standard, HHSC also met its burden.

Since she was not entitled to preferential consideration, it was *Appellant's burden* to establish that she was eligible to serve as guardian and that she was suitable but she failed to meet her burden. The court properly found Appellant was unsuitable to serve pursuant to section 1104.352 thereby disqualifying her to serve as Griswold's guardian. Even if the court erred in admitting evidence of past

unsuitability—which it did not—the error was harmless because there was more than sufficient evidence of present unsuitability.

> ### b. Appellant was also not eligible to serve as guardian because she was disqualified from serving pursuant to Estates Code §§1104.357 and 1104.351(2).

Additional grounds for disqualification of a person to act as guardian include, in relevant parts:

> A person may not be appointed guardian if the person is a nonresident who has failed to file with the court the name of a resident agent to accept service of process in all actions or proceedings relating to the guardianship. Tex. Est. Code §1104.357.

> [A] person who, because of inexperience, lack of education, or other good reason, is incapable of properly and prudently managing and controlling the person . . . of the ward. Tex. Est. Code §1104.351(2).

Here, despite Appellant's footnote 7 on page 31 of her brief stating section 1104.357 does not apply, evidence was presented that at the time of the hearing on July 15th, Appellant had been living in Arkansas for approximately one year, 2RR:52, 60, but did not file a Designation of Resident Agent until September 18, 2024, well after the hearing. 2CR:451–452. As Appellant's motion for new trial was unsworn, no new evidence offered after the hearing is permitted. *See Wiseman*, 821 S.W.2d at 442. Thus, Appellant, was also disqualified from being appointed guardian under section 1104.357 for not having designated a resident agent.

Evidence also established that Appellant was also ineligible to be appointed due to severely lacking experience with and knowledge of Griswold's extremely

high needs to be able to properly and prudently manage and control his person. *See also supra.* Griswold was 7 years old at the time her rights were terminated and at the hearing, he was 19. During this time, Appellant only saw him once, 2 years prior to the hearing. Given his severe needs, it is virtually impossible for Appellant to be knowledgeable and experienced with his needs. She indicated she learned what she could about autism while in prison 10 years prior and completed a few hours of instruction at autism.org. Not only is this insufficient for the purposes of being able to step in to provide for his needs and services and to make medical decisions for him, it also shows her lack of insight into his current condition, circumstances, and best interest—there was no evidence presented she had medical training or otherwise had experience with or spent time truly gaining an understanding about Griswold's autism diagnoses but also, his other diagnoses and conditions including opposition defiant disorder, obsessive compulsive disorder, mood disorder, and severe intellectual/developmental disability as well as his regular and frequent behavior meltdowns. 1CR:204. This evidence, coupled with the risk she presented due to her substance abuse and criminal history (countered only by Appellant's own testimony) as well as her lack of relationship with Griswold, also disqualified Appellant from being appointed guardian of Griswold pursuant to section 1104.351(2).

The evidence was clear that Appellant, in addition to being disqualified and therefore ineligible to be appointed Griswold's guardian due to being unsuitable

under section 1104.352, she was also disqualified and therefore ineligible for failing to have on file her designation of resident agent pursuant to section 1104.357 and due to her inexperience which inhibited her ability to provide proper and prudent care for Griswold pursuant to section 1104.357.

### III. The trial court did not abuse its discretion when it appointed HHSC as guardian of Griswold.

In Appellant's third issue, she claims the trial court erred when it appointed HHSC to serve as guardian of Griswold because the proposed ward was not present at the hearing, the trial court failed to consider the proposed ward's preference for a guardian or the proposed ward's best interest, and the trial court failed to appoint a court investigator or Guardian Ad Litem for the proposed ward.

However, at the time the trial court considered HHSC's guardianship application—having found Appellant unsuitable—there was no dispute that Griswold required a guardian; the court found HHSC was eligible, suitable and in Griswold's best interest to serve as Griswold's guardian; and HHSC's Application was the only remaining application for the court to consider. *See* 2CR:440, 442; *see also* 2RR:22, 30–31, 34, and 95. Moreover, HHSC presented sufficient evidence of each element required under Estates Code section 1101.101.

In fact, *at no time* during the hearing did Appellant object to proceeding *at all* or specifically because Griswold was not present or that his preference was not presented, she did not have notice, an investigator or guardian ad litem had not been

49

appointed, or even to the court taking judicial notice of the court's file. Appellant has not preserved and therefore waived complaint about these issues now. *See* Tex. R. App. P. 33.

Appellant fails to meet her burden by failing to demonstrate how the trial court's appointment was an abuse of discretion or otherwise show the court's ruling was not based on guiding rules or principles, arbitrary or unreasonable, or without at least some evidence of substantive and probative character. *See In re N.L.D.*, 412 S.W.3d at 814. Indeed, the evidence must be viewed in the "light most favorable to the trial court's decision." *Keller*, 233 S.W.3d at 459.

### A. The court's appointment of HHSC was proper and not an abuse of discretion.

HHSC properly filed its application pursuant to Human Resources Code sections 161.101(a) and 161.102(a), as well as its request to intervene pursuant to Estates Code section 1055.003 and gave proper notice and citation to all necessary and interested persons. 1CR:193–226. On July 15th, the court heard evidence as to HHSC's Application directly after a hearing on HHSC's intervention and Appellant's suitability to serve as guardian. The court first permitted HHSC's intervention and found Appellant was unsuitable and therefore disqualified and ineligible to serve. As HHSC's was the only application remaining for the court to consider, the court— without objection—proceeded to hear evidence on HHSC's Application. 2RR:83.

50

For the hearing on HHSC's Application, Appellant, her attorney, Griswold's AAL, and HHSC appeared before the court. HHSC presented sufficient evidence of each element required under Estates Code section 1101.101. 2RR:86–99. Appellant made evidentiary objections, 2RR:89, was permitted to cross–examine the witness, 2RR:96, and indicated she "[did not] have anything further" to present, 2RR:100. Appellant made no objection to the proceeding or when HHSC requested the court take judicial notice "of everything in the Court's file at this point." 2RR:87. The court did "take judicial notice of all the documents in the Court's file" as requested. *Id.* Neither the Appellant nor the AAL presented any controverting evidence or argument regarding HHSC's qualification to serve as guardian of Griswold or Griswold's best interest in HHSC's appointment as his guardian. In fact, Appellant did not object that Griswold was not present nor did she argue there was insufficient evidence to find that Griswold's best interest. Ultimately, the court found HHSC was eligible and suitable to serve as guardian, 2CR:440, 442, and that no other eligible, suitable, and qualified person was available. 2CR:440. The court also found that appointment of HHSC as Griswold's guardian was in his best interest, 2CR:442. Indeed, Griswold needed a guardian, HHSC was suitable and was in his best interest, and HHSC's Application was the only one before the court. Appellant fails to show how this appointment was an abuse of discretion.

**B.** **The court properly appointed an AAL to represent Griswold in this case and had more than sufficient evidence to make a ruling consistent with Griswold's best interest; the court also did not abuse its discretion in denying Appellant's requests for a GAL or a court investigator.**

In applications for guardianships, "the court *shall* appoint an attorney ad litem to . . . represent the ward's interests, including the ward's expressed wishes." Tex. Est. Code §1054.001 (emphasis added). As discussed *supra,* no party disputes Griswold's need and best interests for a guardian to be appointed. An AAL's chief role is to advocate for the proposed ward. A proposed ward's AAL must review all the materials in the court's file, including any applications as well as any testing records and evaluations of the proposed ward, section 1054.005(b), and interview the proposed ward within a reasonable time before the hearing if the proposed ward is able to communicate. "[I]n some situations, an attorney's communication with his client will be hampered by the client's particular situation. . . ." *Franks v. Roades*, 310 S.W.3d 615, 628 (Tex. App.—Corpus Christi–Edinburg 2010). As such, "fully informing the client . . . may be impractical, as for example, where the client . . . suffers from mental disability. . . . [I]t may not be possible to maintain the usual attorney–client relationship." *Id*. Griswold's AAL represented to the court he did familiarize himself "with these copious files . . . and they are a veritable stack of documents." 2RR:80.

52

In contrast, the appointment of a GAL in guardianship application cases is discretionary. Tex. Est. Code §1054.051(a). "In the interest of judicial economy, the court may appoint as guardian ad litem . . . the [same] person who has been appointed attorney ad litem." Tex. Est. Code §1054.052. In other words, *if* a court appoints GAL, the court may appoint the same person as AAL and GAL in a dual role. *Id.* However, as seen in section 1203.051(b), a singular person should not be appointed in this dual role if there is a conflict between the interests to be represented by each. For example, if what the proposed ward *wants* conflicts with what is *in his best interest*, then a different person should be appointed to each role. Where there is a conflict, it is the role of the AAL to represent the proposed ward's expressed wishes and the role of the GAL to represent what is in the proposed ward's best interests. *See* Tex. Est. Code §1054.054. However, as stated, if there is no conflict, it is the duty of the AAL to represent the proposed ward's wishes and interests. *See* Tex. Est. Code §§1002.002, 1002.013, 1054.001, 1054.007(a)(2).

The classic function of the GAL is to assess the circumstances and make a recommendation to the court on what is in the best interests of the GAL's client. Tex. R. Civ. P. 173.4. In guardianship cases, the GAL shall investigate whether a guardianship is necessary and evaluate alternatives to guardianship. Tex. Est. Code §1054.054.

The court may also "appoint a court investigator if the appointment is authorized by the commissioners court." Tex. Est. Code §1054.156. If appointed, the duty of the court investigator is to also "investigate the circumstances alleged in the application to determine whether a less restrictive alternative to guardianship is appropriate." Tex. Est. Code §1054.151.

Here, the court appointed an AAL to represent Griswold, as required. However, upon Appellant's by Appellant and within its discretion, the court did not appoint a separate GAL or court investigator. The burden is on Appellant to demonstrate the court abused its discretion in denying these appointments and she fails to carry this burden. Griswold is non–verbal and, as described in Part II.B(2)(a) *supra*, has severe autism, severe intellectual/developmental disability, and "limited orientation, memory, concentration, insight, and judgment." 1CR:204. Given Griswold's inability to communicate, much less understand or process a guardianship, the role of his AAL in this case was to review the evidence, consider the circumstances, and advocate for Griswold's interests before the court—this is exactly what happened and without objection by Appellant. Additionally, although Appellant claimed there was a conflict between her own interests and the

recommendation of the AAL[14], no conflict between the duties of the AAL and GAL were presented.

Importantly, the stated duty of the GAL is to *evaluate the alternatives to guardianship* and the stated purpose of a court investigator is to investigate *to determine whether a less restrictive alternative to guardianship is appropriate*. However, this does <u>not</u> say evaluate the alternative applicants and there is no dispute that a guardianship is necessary for Griswold and in his best interest. HHSC presented evidence that Griswold is participating in all services that can be offered to Griswold based on his needs and that there are no less restrictive alternatives to guardianship available—as such, a guardianship is still necessary. 2RR:96–97. Boon investigated the needs of Griswold and the services in which he participates and concluded there were no additional services to be provided and that a guardian was still needed. *Id*. Indeed, at no time during the hearing and nowhere in her brief does Appellant claim a less restrictive alternative to guardianship was available. The court found that "no alternatives to guardianship or supports or services are available to the Proposed Ward or are feasible to avoid the need for guardianship." 2CR:440. Therefore, the court did not abuse its discretion when it did not appoint a GAL or court investigator in this matter and Appellant did not demonstrate otherwise. *Even*

---

[14] In her brief in support of appointment of a GAL, Appellant claims Griswold's AAL, because he has expressed his opposition to her application, is "not a neutral appointee." 1CR 39.

*if* the court abused its discretion in denying Appellant's requests, which it did not, the error was harmless as their purpose was unnecessary in this case. Indeed, with a full evidentiary hearing and viewed in the light most favorable to the court's decision, there was more than sufficient evidence for the court to make its findings and rulings and determine the best interests of Griswold. *See Keller*, 233 S.W.3d at 459.

**C.    The court properly proceeded in the hearing for the appointment of a guardian despite Griswold's absence.**

Appellant also claims the court erred when it appointed HHSC as guardian of Griswold because Griswold was not present for the hearing. "A proposed ward must be present at the hearing [for the appointment of a guardian] unless the court, on the record or in the order, determines that a personal appearance is not necessary." Tex. Est. Code §1101.051(b). Appellant argues there was "no indication that [Griswold] knew about the . . . hearing or was given an opportunity to attend." AB:38. However, proof of service on Griswold, which included the hearing date, was filed July 10, 2024. Supp. CR:5. Appellant also argues the AAL did not request for Griswold's appearance to be waived "or that the Court found it to be in [Griswold's] best interests for him not to appear." *Id.* However, this is not required. The standard is that the proposed ward must be present *unless* the court determines it is unnecessary. The court found that "all person[s] required to be personally served . . . have appeared in person or through their attorney in Court." 2CR:441. The court also

determined that "all parties were present and/or represented by counsel." 2CR:442. Griswold's rights were not violated as this determination was within the court's discretion. Appellant also lacks standing to claim Griswold's due process rights were violated. *See In re G.F.*, 2012 WL 112549, at *1 (Tex. App.—Beaumont 2012) (a party may not complain of errors which only affect the rights of others) (citing *In the Interest of T.N. and M.N.*, 142 S.W3d 522, 524 (Tex. App—Fort Worth 2004, no pet.)).

The court also acknowledged the severity of Griswold's needs, including his lack of capacity to make personal decisions, including his residence. *See id.* Indeed, Griswold lacked capacity to communicate or understand or process the hearing. *See* 1CR:203–208; *see also generally* 2RR. In his DID evaluation, it is reported Griswold once pulled out his own tooth to which the opinion given was that "he likely does not feel pain normally." 1CR:204. His inability to communicate is so severe that even after pulling out a tooth, it is unclear if or in what way he experienced pain. Given Griswold's severe incapacity and lack of ability to communicate, even if the court did not comply with section 1101.051(b), the error was harmless as his presence would not have provided any benefit to the court or to Griswold. In fact, his DID evaluation reported that "[h]is tendencies toward internalization of emotional distress were Clinically Significant, and indicate he is likely to experience anxiety or depression when stressed. His tendencies toward

externalization of emotional distress are Elevated, indicating he [] may act out when under stress." 1CR:206. It is significant Appellant now complains Griswold was not present when his presence would have offered little benefit if any but also could have been harmful to him. Additionally, there was also no indication Griswold requested to be present at a hearing on the appointment of a guardian. Finally, Appellant made no objection at the hearing regarding Griswold's absence. The court did not abuse its discretion but if it did, the error was harmless due to Griswold's incapacity.

**D.** **The court properly proceeded without evidence of Griswold's preference because he was unable to communicate his preference, because a determination of Appellant's suitability did not require consideration of his preference, and in considering eligible guardians, HHSC's was the only application to consider.**

In her brief, Appellant claims because there is "no evidence of [Griswold's] preference," the trial court did not comply with Tex. Est. Code §1104.002. Section 1104.002 requires the court to "make a reasonable effort to consider the incapacitated person's preference of the person to be appointed guardian . . . [and] give due consideration to [that] preference."

First, as discussed *supra*, Griswold is non–verbal and is diagnosed, among other things, as having autism and a severe intellectual/developmental disability. 1CR:204. As such, Griswold is unable to comprehend, exercise judgment, or even communicate his preference. *See id.* It was presented that Griswold does not like

change, 2RR:82, although Appellant admitted she is "not aware" of that because she hasn't "been around him that much," 2RR:65.

Appellant's arguments for Griswold's presence or preference—which she failed to argue or object to at the hearing and as such are not preserved—are disingenuous at best and at worst show a lack of insight into his needs and his best interests. Griswold's preference was not relevant in the court's initial hearing to determine Appellant's suitability. Regarding HHSC's Application, Griswold's preference was not applicable as there was only one remaining application for the court to consider and the court found HHSC was suitable. This fact illustrates the caution taken by the court—if participation in the hearing or consideration of preferences could have caused Griswold any distress, it would have been for naught since Appellant was not even eligible to be appointed his guardian. The court did not abuse its discretion by proceeding in the hearings without Griswold's presence and properly proceeded in appointing HHSC as Griswold's guardian—a determination which any preference was not applicable.

## IV. The court did not abuse its discretion in denying Appellant's motion for new trial.

Appellant's brief filed on March 4, 2025, does not include the court's October 8, 2024, Order Denying Motion and Supplemental Motion for New Trial in the appendix as required by Texas Rule of Appellate Procedure 38.1(k)(1)(A) nor does she include any argument or citations regarding this order and its review on appeal

as required by Texas Rule of Appellate Procedure 38.1(i). For these reasons, Appellant has waived her appeal of this order. *See In re Guardianship of Rombough*, 2012 WL 1624027, at *3 (Tex. App.—Fort Worth 2012) (citing *Gray v. Nash*, 259 S.W.3d 286, 294 (Tex. App.—Forth Worth 2008, pet. denied) (deciding issues were waived due to inadequate briefing)).

To the extent this Court considers her appeal of this order, Appellant still falls short. Appellant fails to establish the court abused its discretion. In her Motions, Appellant argues she was entitled to notice, she had additional witnesses and evidence to present, HHSC should have been prevented from intervening as Appellant was available to serve, the court made improper and unauthorized determinations as to her suitability due to the lack of an investigation of herself, the court relied on stale evidence regarding her suitability, and that HHSC failed to meet its burden to be appointed guardian. Appellant's motions are replete with fact allegations that were not presented at trial. Both of Appellant's Motions were unsworn and so any allegation of new facts, including her Designation of Resident Agent filed the same day as the hearing on her motion for new trial, is incompetent evidence. *See Wiseman*, 821 S.W.2d at 442. However, even if the court were to consider any new evidence regarding Appellant's current circumstances, she still fails to overcome her lack of knowledge and experience with Griswold's severely high needs. The court did not abuse its discretion in denying Appellant's Motions.

**Prayer**

The trial court did not abuse its discretion when it granted HHSC's intervention, found Appellant unsuitable, appointed HHSC as Griswold's guardian, and denying Appellant's motion for new trial. HHSC prays the Court affirm the trial court's findings and orders and for such other and further relief to which it may be entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ *Terri M. Abernathy*

TERRI M. ABERNATHY
Assistant Attorney General
Texas Bar No. 24062894
Office of the Attorney General of Texas
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711–2548
Phone (512) 979-5354
Division Fax (512) 320-0667
Email terri.abernathy@oag.texas.gov

61

*Counsel for Appellee, Texas Health and Human Services Commission*

## Certificate of Service

I hereby certify that on June 10, 2025, a true and correct copy of the foregoing instrument was filed via the Court's electronic filing manager causing electronic service upon all counsel of record in accordance with Texas Rule of Appellate Procedure 9(5(b)1).

Tracia Y. Lee
Kean | Miller, LLP
Pennzoil South Tower
711 Louisiana Street, Suite 1800
Houston, Texas 77002
Phone (713) 844-3062
Email Tracia.Lee@keanmiller.com

*Counsel for Appellant,*
*Candice Jeffcoat*

/s/ *Terri M. Abernathy*
Terri M. Abernathy
Assistant Attorney General

## Certificate of Compliance

This document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14–point for text and 12–point for footnotes. This document also complies with the word–count limitations of Texas Rule of Appellate Procedure 9.4(i), if applicable, because it contains 15,000 words, excluding any parts exempted by Texas Rule of Civil Procedure 9.4(i)(1).

/s/ *Terri M. Abernathy*
Terri M. Abernathy
Assistant Attorney General

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Terri Abernathy on behalf of Terri Abernathy
Bar No. 24062894
terri.abernathy@oag.texas.gov
Envelope ID: 101866804
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: HHSC Appellees Response Brief
Status as of 6/11/2025 9:09 AM CST

Associated Case Party: Texas Health and Human Services Commission

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jonathan Petix | 24027728 | jonathan.petix@hhs.texas.gov | 6/10/2025 11:41:59 PM | SENT |
| Terri Abernathy | | terri.abernathy@oag.texas.gov | 6/10/2025 11:41:59 PM | SENT |
| Tristan AGarza | | tristan.garza@oag.texas.gov | 6/10/2025 11:41:59 PM | SENT |

Associated Case Party: Candice Jeffcoat

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Tracia Lee | | e-serve@keanmiller.com | 6/10/2025 11:41:59 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 6/10/2025 11:41:59 PM | SENT |

No. 15-25-00017-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
6/10/2025 11:41:59 PM
CHRISTOPHER A. PRINE
Clerk

# In the Court of Appeals
# for the Fifteenth Judicial District

In the Guardianship of Landen Thomas Griswold,
an Incapacitated Person

On Appeal from Cause No. G00074
County Court at Law
Cherokee County, Texas

**INDEX OF APPELLEE'S APPENDIX**

| Appx. | Document |
|---|---|
| 1 | Texas Human Resources § 161.101 |
| 2 | Texas Human Resources § 161.102 |
| 3 | Texas Estates Code § 1055.003 |

*i*

Vernon's Texas Statutes and Codes Annotated
  Human Resources Code (Refs & Annos)
    Title 11. Aging, Community-Based, and Long-Term Care Services
      Chapter 161. Department of Aging and Disability Services (Refs & Annos)
        Subchapter E. Guardianship Services

V.T.C.A., Human Resources Code § 161.101

§ 161.101. Guardianship Services

Currentness

(a) The department shall file an application under Section 1101.001 or 1251.003, Estates Code, to be appointed guardian of the person or estate, or both, of a minor referred to the department under Section 48.209(a)(1) for guardianship services if the department determines:

(1) that the minor, because of a mental or physical condition, will be substantially unable to provide for the minor's own food, clothing, or shelter, to care for the minor's own physical health, or to manage the individual's own financial affairs when the minor becomes an adult; and

(2) that a less restrictive alternative to guardianship is not available for the minor.

(b) The department shall conduct a thorough assessment of the conditions and circumstances of an elderly person or person with a disability referred to the department under Section 48.209(a)(2) for guardianship services to determine whether a guardianship is appropriate for the individual or whether a less restrictive alternative is available for the individual. In determining whether a guardianship is appropriate, the department may consider the resources and funds available to meet the needs of the elderly person or person with a disability. The executive commissioner shall adopt rules for the administration of this subsection.

(c) Subject to Subsection (c-1), if after conducting an assessment of an elderly person or person with a disability under Subsection (b) the department determines that:

(1) guardianship is appropriate for the elderly person or person with a disability, the department shall:

(A) file an application under Section 1101.001 or 1251.003, Estates Code, to be appointed guardian of the person or estate, or both, of the individual; or

(B) if the department determines that an alternative person or program described by Section 161.102 is available to serve as guardian, refer the individual to that person or program as provided by that section; or

(2) a less restrictive alternative to guardianship is available for the elderly person or person with a disability, the department shall pursue the less restrictive alternative instead of taking an action described by Subdivision (1).

(c-1) Not later than the 70th day after the date the department receives a referral under Section 48.209(a)(2) for guardianship services, the department shall make the determination required by Subsection (c) and, if the department determines that guardianship is appropriate and that the department should serve as guardian, file the application to be appointed guardian under Section 1101.001 or 1251.003, Estates Code. If the department determines that an alternative person or program described by Section 161.102 is available to serve as guardian, the department shall refer the elderly person or person with a disability to that alternative person or program in a manner that would allow the alternative person or program sufficient time to file, not later than the 70th day after the date the department received the referral, an application to be appointed guardian.

(c-2) With the approval of the Department of Family and Protective Services, the department may extend, by not more than 30 days, a period prescribed by Subsection (c-1) if the extension is:

(1) made in good faith, including any extension for a person or program described by Section 161.102 that intends to file an application to be appointed guardian; and

(2) in the best interest of the elderly person or person with a disability.

(d) The department may not be required by a court to file an application for guardianship, and except as provided by Subsection (f) and Section 1203.108(b), Estates Code, the department may not be appointed as permanent guardian for any individual unless the department files an application to serve or otherwise agrees to serve as the individual's guardian of the person or estate, or both.

(e) A guardianship created for an individual as a result of an application for guardianship filed under Subsection (a) may not take effect before the individual's 18th birthday.

(f) On appointment by a probate court under Section 1203.108(b), Estates Code, the department shall serve as the successor guardian of the person or estate, or both, of a ward described by that section.

**Credits**
Added by Acts 2005, 79th Leg., ch. 268, § 3.04, eff. Sept. 1, 2005. Amended by Acts 2009, 81st Leg., ch. 726, § 2, eff. June 19, 2009; Acts 2009, 81st Leg., ch. 935, § 1, eff. Sept. 1, 2009; Acts 2015, 84th Leg., ch. 1 (S.B. 219), § 4.456, eff. April 2, 2015.

<V.T.C.A., Human Resources Code § 161.003 provides for the expiration of this chapter, which is subject to the Texas Sunset Act (V.T.C.A., Government Code Ch. 325).>

V. T. C. A., Human Resources Code § 161.101, TX HUM RES § 161.101

Current through legislation effective May 21, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Human Resources Code (Refs & Annos)
    Title 11. Aging, Community-Based, and Long-Term Care Services
      Chapter 161. Department of Aging and Disability Services (Refs & Annos)
        Subchapter E. Guardianship Services

V.T.C.A., Human Resources Code § 161.102

§ 161.102. Referral to Guardianship Program, Court, or Other Person

Currentness

(a) If the department becomes aware of a guardianship program, private professional guardian, or other person willing and able to provide the guardianship services that would otherwise be provided by the department to an individual referred to the department by the Department of Family and Protective Services under Section 48.209, the department shall refer the individual to that person or program for guardianship services.

(b) If requested by a court, the department shall notify the court of any referral made to the department by the Department of Family and Protective Services relating to any individual who is domiciled or found in a county where the requesting court has probate jurisdiction and who may be appropriate for a court-initiated guardianship proceeding under Chapter 1102, Estates Code. In making a referral under this subsection and if requested by the court, the department shall, to the extent allowed by law, provide the court with all relevant information in the department's records relating to the individual. The court, as part of this process, may not require the department to:

(1) perform the duties of a guardian ad litem or court investigator as prescribed by Chapter 1102, Estates Code; or

(2) gather additional information not contained in the department's records.

**Credits**
Added by Acts 2005, 79th Leg., ch. 268, § 3.04, eff. Sept. 1, 2005. Amended by Acts 2015, 84th Leg., ch. 1 (S.B. 219), § 4.457, eff. April 2, 2015.

<V.T.C.A., Human Resources Code § 161.003 provides for the expiration of this chapter, which is subject to the Texas Sunset Act (V.T.C.A., Government Code Ch. 325).>

V. T. C. A., Human Resources Code § 161.102, TX HUM RES § 161.102
Current through legislation effective May 21, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
 Estates Code (Refs & Annos)
  Title 3. Guardianship and Related Procedures (Refs & Annos)
   Subtitle C. Procedural Matters
    Chapter 1055. Trial and Hearing Matters
     Subchapter A. Standing and Pleadings

V.T.C.A., Estates Code § 1055.003

§ 1055.003. Intervention by Interested Person

Currentness

(a) Notwithstanding the Texas Rules of Civil Procedure and except as provided by Subsection (d), an interested person may intervene in a guardianship proceeding only by filing a timely motion to intervene that is served on the parties.

(b) The motion must state the grounds for intervention in the proceeding and be accompanied by a pleading that sets out the purpose for which intervention is sought.

(c) The court has the discretion to grant or deny the motion and, in exercising that discretion, must consider whether:

(1) the intervention will unduly delay or prejudice the adjudication of the original parties' rights; or

(2) the proposed intervenor has such an adverse relationship with the ward or proposed ward that the intervention would unduly prejudice the adjudication of the original parties' rights.

(d) A person who is entitled to receive notice under Section 1051.104 is not required to file a motion under this section to intervene in a guardianship proceeding.

**Credits**
Added by Acts 2015, 84th Leg., ch. 1031 (H.B. 1438), § 7, eff. Sept. 1, 2015. Amended by Acts 2017, 85th Leg., ch. 514 (S.B. 39), § 7, eff. Sept. 1, 2017.

V. T. C. A., Estates Code § 1055.003, TX EST § 1055.003
Current through legislation effective May 21, 2025, of the 2025 Regular Session of the 89th Legislature. Some statute sections may be more current, but not necessarily complete through the whole Session. See credits for details.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.